# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHERIDAN THOMAS, MIRANDA MELSON, JANE DOE 1, JANE DOE 2, SYDNEY BRUN-OZUNA, JANE DOE 3, CAPRI DAVIS, JANE DOE 4, JANE DOE 5, and OTHER UNIDENTIFIED FEMALE DOES, | Case No. 4:20-cv-03081 |
| | Hon. Robert F. Rossiter, Jr. |
| Plaintiffs, | Magistrate Judge Susan M. Bazis |
| v. | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, and individuals PETE JEYARAM, LAURIE BELLOWS, JAKE JOHNSON, MATTHEW HECKER, TAMIKO STRICKMAN, JEFF LAMOUREAUX, MEAGAN COUNLEY, RYAN FETTE, BRIANA PALLAS-SEARS, SUE KELLY MOORE, SANDRA CHAVEZ, and JAMIE PEER, individually and in their official capacities, and OTHER UNIDENTIFIED DEFENDANTS, | **PLAINTIFFS' BRIEF OPPOSING DEFENDANTS' MOTION TO DISMISS AND SEVER** |
| Defendants. | |

Karen Truszkowski
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

Elizabeth K. Abdnour
Bar Numbers: 0081795 (OH), P78203 (MI)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
Email: elizabeth@abdnour.com

*Attorneys for Plaintiffs*

## INTRODUCTION

This Complaint was brought by nine female students who, over the course of approximately five years, brought, attempted to bring, or were dissuaded entirely from bringing complaints of rape, sexual assault, sexual harassment, stalking, and relationship violence forward to the University of Nebraska-Lincoln's Title IX office. Time and again, the UNL Title IX process failed these women. They were denied accommodations and interim measures, asked sexually harassing questions in the investigation process, prevented from accessing hearing and appeals processes, belittled, ignored, and placed in further harm of sex discrimination by the very office that was supposed to protect and assist them. Their investigations were mishandled, they were denied hearings and appeal proceedings, and some of them were flat-out ignored. Three of the Plaintiffs were forced to leave UNL to seek an education elsewhere because they simply did not feel safe on campus anymore – not because of the sexual misconduct they experienced, but because the UNL Title IX process failed them so completely.

The facts outlined in the Complaint illustrate a Title IX response system so flawed that it might as well not exist at all. Defendants argue that each of the claims supported by the allegations in the Complaint should be dismissed. In doing so, Defendants replicates the deliberate indifference shown to each of these Plaintiffs individually as well as to survivors of sex discrimination as a group.

Plaintiffs oppose Defendants' Motions to Dismiss and Sever pursuant to Federal Rules of Civil Procedure 12(b)(6), 20, 21 and Local Rule NECivR 7.1(a). Defendants argue that the Complaint should be dismissed because Plaintiffs have failed to state a claim and that Plaintiff and Defendants should be severed because Plaintiffs' claims and the right to relief asserted against Defendants do not arise out of the same transaction or occurrence, there is no question of law or

fact common to all Plaintiffs or Defendants, and potential jury confusion or prejudice.

Based upon Defendants' arguments, Plaintiffs consent to dismissal of Counts III, IV, VI, VII, VIII, IX, and X. With respect to Counts I, II, and V, the Court should reject these arguments because Plaintiffs' claims against Defendants are well pled and facially plausible. Defendants seek dismissal by disregarding legal standards and attempting to distort the facts by eliminating or heavily editing the facts that do not benefit them. With regard to severance, Plaintiffs' accounts are intrinsically individual—they were assaulted at different times and had different experiences during the reporting and investigation process. But their experiences merged during their interactions with the Defendants, and each Plaintiff was harmed by their dealings with the Defendants in the Title IX reporting and investigation process. In each case, the University failed to protect the Plaintiffs, appropriately investigate reports of sexual misconduct, and protect students' rights under Title IX and other relevant laws. While the Plaintiffs have suffered a variety of harms, the issue at the heart of this lawsuit is the same injury, with the same Defendants at fault, due to the systemic pattern of failures in the University's Title IX reporting process.

Dismissal under Rule 12(b)(6) should only be granted if Defendants can conclusively demonstrate—based on only the allegations in the Complaint itself—that Plaintiffs cannot state a claim for relief. Defendants have not done so. By manipulating and rewriting Plaintiffs' factual allegations, Defendants have created a dispute of material fact which precludes Rule 12(b)(6) dismissal. Because all Plaintiffs were injured by Defendants' systemic failure to meet their Title IX obligations, there was a policy or practice of discrimination, satisfying the requirements of Rule 20 and making joinder proper. Therefore, Defendants' Motions to Dismiss and Sever must be denied.

## BACKGROUND

On July 20, 2020, Plaintiffs filed this action. Plaintiffs filed a First Amended Complaint on November 13, 2020, and a Second Amended Complaint on November 18, 2020. In response, Defendants filed a Motion to Dismiss and to Sever pursuant to Fed. R. Civ. P. 12(b)(6), 20, 21 and Local Rule NECivR 7.1(a).

## COUNTS III, IV, VI, VII, VIII, IX, AND X

Plaintiffs consent to dismissal of the following claims:

- Count III: Violation of Title VI Intentional Discrimination on the Basis of Race and Color in Federally Funded Programs, Title VI of the Civil Rights Act of 1964 and 34 C.F.R. §§ 100 *et seq*. and 42 U.S.C. § 1983

- Count IV: Denial of Due Process, 42 U.S.C. § 1983, the Fifth Amendment, and the Fourteenth Amendment

- Count VI: Discrimination on the Basis of Sex and Color, Nebraska State Constitution

- Count VII: Discrimination on the Basis of Gender and Color, Charter of the University of Nebraska and Neb. Rev. Stat. §§ 85-101 *et seq*.

- Count VIII: Negligence

- Count IX: Negligent Infliction of Emotional Distress

- Count X: Breach of Contract

## STANDARD OF REVIEW

### A. MOTION TO DISMISS

Rule 8 requires that a complaint contain a "short and plain statement of the claim showing

4

that the pleader is entitled to relief." The Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly,* 550 U.S. at 556. A complaint states a plausible claim for relief if its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, "a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018 (8th Cir. 2020) (citing *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012)). Furthermore, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal citations omitted).

### B. MOTION TO SEVER

Rule 20 permits joinder when an issue arises out of the same transaction, occurrence, or series of transactions or occurrences and there is any question of law or fact common to all defendants. The purpose of Rule 20 is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. General Motors Corp*., 497 F.2d 1330, 1332 (8th Cir. 1974) (citing 7 *C. Wright, Federal Practice and Procedure* § 1652 at 265 (1972)). To this end, the "impulse is toward entertaining the broadest possible scope of

action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *Id*. at 1332-33 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)).

The same transaction or occurrence test is satisfied through the existence of an organization-wide policy and practice of discrimination. *Mosley*, 497 F.2d at 1334. *See also Geir By and Through Geir v Educ. Serv. Unit No. 16*, 144 F.R.D. 680, 689 (D. Neb. 1992) (finding that the same transaction or occurrence requirement was satisfied where students were injured by a school's "general policy or custom" of condoning abuse, regardless of the factual differences between Plaintiffs' claims, including that the Plaintiffs were assaulted on different dates by different employees); *Tridle v. Union Pacific R.R. Co.*, No. 8:08CV470, 2009 WL 1783558, at *2 (D. Neb. June 22, 2009) (finding that the same transaction or occurrence test was satisfied because the claims centered on the adequacy of the "general policies, procedures, and programs" of their employer, even though each plaintiff suffered a physical injury at a different time and under different circumstances); *Brown v. City of Omaha*, No. 8:05CV457, 2006 WL 8458386, at *3 (D. Neb. Sept. 29, 2006) (finding that the same transaction or occurrence test was satisfied based on "allegations of systematic discrimination or patterns of discrimination" even though Plaintiffs applied for disability related pensions based of different injuries, held different positions, and were denied benefits at different times).

The common question of law or fact requirement is satisfied when a defendant has allegedly engaged in an unconstitutional or discriminatory policy or pattern of practice. *See Mosley*, 497 F.2d at 1332 (holding that a common question of law or fact existed where the discriminatory character of defendant's conduct was basic to each plaintiff's recovery). *See also Geir*, 144 F.R.D. at 689 (finding a common question of law or fact where Plaintiffs were injured

by a "policy or custom" of condoning abuse and the knowing failure to remedy such abuse); *Brown*, 2006 WL 8458386, at *2 (holding that allegations of systemic discrimination satisfy the commonality requirement); *Tridle*, 2009 WL 1783558, at *2 (finding a common question where the adequacy of an employer's policies and procedures was pertinent to each Plaintiffs' claim); *Middleton v. Complete Nutrition Franchising, LLC*, No. 8:18CV115, 2018 WL 6045260 at *3, (D. Neb. Nov. 19, 2018) (finding no common question or law of fact because Plaintiffs failed to allege a common practice or policy). The commonality requirement does not mandate that all the questions of law or fact are common. *Mosley*, 497 F.2d at 1334. Put another way, "[a]lthough the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class." *Id.* (citing *Hall v. Werthan Bag Corp.*, 251 F.Supp. 184, 186 (M.D.Tenn.1966). Even when plaintiffs suffer different effects from alleged discrimination, it is "immaterial for the purposes of determining the common question of law or fact," and the second requirement of Rule 20(a) is satisfied. *Id.*

In their Motion to Sever Standard section, Defendants rely primarily on an unpublished District Court case. *See* Def. Br. Doc. 41, §III(A) at 35-36 (citing *Lustgraaf v. Sunset Financial Services Inc.*, 2013 WL 12121198 (D. Neb. 2013) at *1). They cite: "In exercising [motion to sever] discretion, courts balance several considerations, including (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the presentation of different evidence, (3) the convenience of the parties, (4) possible prejudice to the parties, and (5) whether severance will promote judicial economy and expeditious resolution of the case." *Id.* (citing *German by German v. Federal Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 & n.6 (S.D.N.Y. 1995)). *Lustgraaf* is distinguishable from the present case. First, in *Lustgraaf*, the motion to sever was brought by the plaintiffs, who requested a third-party

claim and counterclaim be severed. *See Lustgraaf*, 2013 WL 12121198, at *1. *See also In re Green*, No. 8:08CV335, 2012 WL 5050594, at *1 (Bankr. D. Neb. Oct. 18, 2012), report and recommendation adopted sub nom. *Lustgraaf v. Sunset Fin. Servs., Inc.*, No. 8:08CV335, 2012 WL 5996955 (D. Neb. Nov. 7, 2012) (bankruptcy judge's recommendation that the motion to sever be granted). The dynamics of a plaintiff requesting to sever a third party or counterclaim are fundamentally different than a defendant requesting to sever all of the parties. When a plaintiff asks to sever a third party or counterclaim, the purpose is to preserve the case that they originally brought. When a defendant seeks to sever plaintiffs and defendants, they are trying to gain a strategic advantage. Therefore, Defendants' motion in this case should be treated differently. Second, *Lustgraaf* involved a more complicated set of facts involving fraud and securities violations in bankruptcy court. *See* 2013 WL 12121198, at *1. In comparison, Plaintiffs' facts are less technical than those in *Lustgraaf*, making it feasible and expeditious to maintain the joinder. Finally, while the court in *Lustgraaf* granted the motion to sever, it did not atomize all of the claims into individual cases. *See* 2013 WL 12121198, at *1-2. Rather, the court simply severed and stayed the third-party claim and counterclaims, keeping them together pending the outcome of the main action, which still involved multiple plaintiffs. *Id*.

Defendants also argue that *Black Elk v. Roy*, No. 18-CV-3255, 2019 WL 885641, at *1 (D. Minn. Feb. 5, 2019) supports their position. Likewise, *Black Elk* is distinguishable from the instant case. In *Black Elk*, the Plaintiffs are all *pro se* litigants and in order for multiple plaintiffs to "proceed *in forma pauperis*, each plaintiff must qualify for IFP status." Because of this and other "procedural tangles," the Court separates the claims. Here, Plaintiffs are all represented by one set of attorneys, with no similar foreseeable "procedural tangles."

*Mosley*, as an Eighth Circuit case with a more similar fact pattern, as well as the district court cases cited above, provide more relevant and more thorough precedent. The cases cited above should therefore create the standard for evaluating the motion to sever.

## ARGUMENT

### I.   OPPOSITION TO MOTION TO DISMISS

#### A. The Complaint states claims for relief with sufficient supporting facts

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint states a plausible claim for relief if its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678). "A court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1025 (8th Cir. 2020) (*citing U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). Further, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d 585 at 594.

Plaintiffs' Second Amended Complaint provides sufficient facts to withstand a motion to dismiss. Defendants' motion does not claim a lack of facts or plausibility. Rather, Defendants systematically contradict the factual allegations in the complaint, replace those facts with their preferred versions of events, and argue how these disputed facts should be applied to the law—in

other words, by parsing piece by piece.  For example, with regard to Plaintiff Melson, Defendants write, "Melson alleged a singular sexual misconduct of July 2016, and therefore, cannot show that the alleged sexual misconduct of July 2016 had a systemic effect such that Melson was denied equal access to education opportunities provided by BRUN because a single instance of sufficiently severe one-on-one peer harassment could not be said to have such an effect."  Def. Br. Doc. 41 at 52.  As clearly outlined in the Complaint, Melson also filed a complaint regarding stalking, which was never investigated or adjudicated.  As another example, with regard to Plaintiff Jane Doe 1, Defendants write, "Doe 1 does not allege that she was sexually harassed by JR4 after IEC's investigations and the subsequent sanctions against JR4."  Def. Br. Doc. 41 at 54.  Again, per the Complaint, Jane Doe 1 reported JR4's email reading, "Get a fucking life you stupid cunts. If you can't convince the kangaroo court that is Title IX that you were violated then you have no case. Go fuck yourselves," to Defendant Moore, which Defendant Moore told her would not be investigated.

As noted previously, in the motion to dismiss stage, Plaintiffs' alleged facts are to be accepted as true and viewed in light most favorable to them.  *LSP Transmission Holdings, LLC*, 954 F.3d at 1025.  The existence of disputed facts, Defendants' twenty-some pages of rewritten facts, and Defendants' heavy engagement with the facts in the context of the legal standards at issue make it clear that discovery is necessary and that Defendants' Motion to Dismiss must be denied.

### B.  Defendants' motion is premature and argues for summary judgment, not dismissal

In deciding whether to grant a motion to dismiss for failure to state a claim, a court may only consider the pleading to determine whether or not the case can move forward.  No additional evidence may be considered at the dismissal stage.  A Rule 12(b)(6) motion does not resolve

factual issues. This Court cannot determine what happened or when. It also does not examine the merits of Plaintiffs' claim or Defendants' arguments against it. It simply asks whether a legal claim exists. In contrast, a motion for summary judgment asks a court to decide the case or specific claims in the case in the moving party's favor.

Due to their heavy reliance on factual disputes, Defendants' Motion to Dismiss is, effectively, a Motion for Summary Judgment, which is premature. Defendants attempt to discredit Plaintiffs' factual allegations by cherry-picking some of the alleged facts, rewriting others, and ignoring still others—even though the applicable legal standard requires that all facts in the Complaint must be accepted as true, proving that a motion to dismiss cannot be granted at this point. Pursuant to Rule 12(d), "If, on a motion under Rule 12(b)(6) [to dismiss for failure to state a claim] . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." In their motion, Defendants spend approximately 25 pages reconstructing the facts to suit their arguments. They have created a document which presents matters outside the pleadings. Therefore, this Court must either exclude all of the facts as presented by Defendants or treat Defendants' Motion to Dismiss as a Motion for Summary Judgment.

Under Rule 56, in order to succeed in a motion for summary judgment, a movant must show 1) that there is no genuine dispute as to any material fact, and 2) that the movant is entitled to judgment as a matter of law. Defendants motion itself demonstrates that there is genuine dispute as to material facts in this case. Thus, this Court must deny the Motion to Dismiss, and cannot grant summary judgment at this stage because facts are in dispute.

**C. Eleventh Amendment immunity does not apply to Title IX claims**

Title IX of the Educational Amendments of 1973, 20 U.S.C. §§ 1681, *et seq.*, prohibits

discrimination against persons on the basis of sex in "any program or activity receiving Federal financial assistance." Section 2000d-7 of Title 42 provides: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [and] title VI of the Civil Rights Act of 1964."

Defendants' argument that they are immune to claims under Title IX is completely contradictory to well-established law. The Eleventh Amendment is no bar to actions brought by private plaintiffs under Title IX. Congress conditioned receipt of federal financial assistance on waiver of States' immunity to private suits brought to enforce Title IX. Congress enacted 42 U.S.C. 2000d-7 to put state agencies on notice that accepting federal financial assistance was conditioned on waiving their Eleventh Amendment immunity to discrimination suits under Title IX, Title VI, and section 504 of the Rehabilitation Act.

The waiver of Eleventh Amendment immunity in civil rights matters has been the subject of prolific litigation and every Circuit but one—where the question has yet to be tested—has found against defendants, as recently noted by the Fifth Circuit in *Gruver v. La. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, No. 19-30670 (5th Cir. 2020):

> The Eleventh Amendment bars suits that individuals file against states in federal court. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). As with just about every rule, there are exceptions. One is that a state may waive its immunity, and Congress can induce a state to do so by making waiver a condition of accepting federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277–79 (5th Cir. 2005) (en banc).
>
> We held twenty years ago that this type of Spending Clause waiver exists for Title IX. *Pederson*, 213 F.3d at 876. *Pederson* concluded that the following statute—enacted in 1986 as the Civil Rights Remedies Equalization Act—validly conditioned Title IX funding on a recipient's waiver of Eleventh Amendment immunity:

12

> A State shall not be immune under the Eleventh Amendment of the
> Constitution of the United States from suit in Federal court for a
> violation of section 504 of the Rehabilitation Act of 1973, title IX
> of the Education Amendments of 1972, the Age Discrimination Act
> of 1975, title VI of the Civil Rights Act of 1964, or the provisions
> of any other Federal statute prohibiting discrimination by recipients
> of Federal financial assistance.
>
> 42 U.S.C. § 2000d–7(a)(1); *see also Pederson*, 213 F.3d at 876.  In exchange for
> receiving federal funds, LSU subjected itself to the *Pederson* suit challenging its
> failure to field women's soccer and softball teams. 213 F.3d at 876.  We have since
> reaffirmed that holding in cases dealing with other antidiscrimination statutes
> mentioned in section 2000d–7. *See Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421
> F.3d 342, 347–52 (5th Cir.  2005) (en banc) (Rehabilitation Act); *Pace*, 403 F.3d
> at 280–87 (same).  **We are not alone.  Every circuit to consider the question—
> and all but one regional circuit has—agrees that section 2000d–7 validly
> conditions federal funds on a recipient's waiver of its Eleventh Amendment
> immunity.**  [Emphasis added].  *Gruver* at 181-182.

The Court cites to the controlling case in each Circuit, including *Jim C. v. United States*, 235 F.3d

1079, 1082 (8th Cir. 2000) (en banc),[1] as well as *Barbour v.  Wash.  Metro.  Area Transit Auth.*,

374 F.3d 1161, 1170 (D.C.  Cir.  2004); *Nieves-Marquez v.  Puerto Rico*, 353 F.3d 108, 129 (1st

Cir.  2003); *Koslow v.  Pennsylvania*, 302 F.3d 161, 176 (3d Cir.  2002); Robinson v. Kansas, 295

F.3d 1183, 1190 (10th Cir. 2002), *abrogated on other grounds by Muscogee (Creek) Nation v.*

*Pruitt,* 669 F.3d 1159 (10th Cir. 2012); *Nihiser v. Ohio* E.P.A., 269 F.3d 626, 628 (6th Cir.  2001);

*Cherry v. Univ. of Wis. Sys. Bd. of Regents*, 265 F.3d 541, 555 (7th Cir. 2001); *Sandoval v. Hagan*,

197 F.3d 484, 500 (11th Cir. 1999), *rev'd on other grounds*, 532 U.S. 275 (2001); *Litman v. George*

*Mason Univ*., 186 F.3d 544, 555 (4th Cir. 1999); and *Clark v. California*, 123 F.3d 1267, 1271

(9th Cir. 1997).

---

[1] "The defendant moved to dismiss the suit, asserting sovereign immunity, as recognized by the Eleventh
Amendment. The District Court denied the motion, holding that the abrogation provision of Section 504, 42 U.S.C.
§ 2000d-7(a)(1), was a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment…. The
Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits
brought in federal court for violations of Section 504…  The State may take the money or leave it. Other than the
vacated panel opinion in this case, we know of no authority holding any choice so coercive as to exceed the limits of
the Spending Clause. Sovereign states are fully competent to make their own choice." *Jim C*. at 1080-1082.

This is well-settled law. Defendants ask this Court to grant them immunity in contravention to both the clear language of the United States Code and the holdings of almost every Circuit Court of Appeals in the nation, including the Eighth Circuit. They provide no justification as to why they should receive such exceptional treatment; in fact, their brief does not even mention 42 U.S.C. § 2000d–7. This Court must deny their Motion to Dismiss.

### D. Counts I and II: Title IX claims

Defendants repeatedly cite to *Kinman v. Omaha Pub. Sch. Distr*., 171 F.3d 607 (8th Cir. 1999) to support an argument that "turning a blind eye" is the definition of deliberate indifference in the Eighth Circuit. However, this is not the case. Per the *Kinman* Court: "Accordingly, the Court held that a plaintiff in a Title IX case may not recover against a school district without first showing that a district official with the authority to address the complained-of conduct and take corrective action had actual notice of the harassing behavior and failed adequately to respond. See *id.* at 1999." *Kinman*, 171 F.3d at 610, *citing Gebser v. Lago Vista Indep. Sch. Dist*., 118 S.Ct. 1989, 1999 (1998). What this Court must determine in this case is whether University officials with Title IX responding authority had actual notice of the harassing conduct experienced by the Plaintiffs and, if so, whether those officials failed to adequately respond to such notice.

The leading cases addressing the question of deliberate indifference in the Title IX context in the Eighth Circuit are *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054 (8th Cir. 2017) and *Shank v. Carleton College*, No. 19-3047 (8th Cir. 2021). In *K.T.*, the Court affirmed the District Court's dismissal of plaintiff's complaint based on failure to state a claim. The Court held: "…K.T.'s complaint lacks factual content allowing us to conclude that either the alleged misconduct or Culver-Stockton's response to K.T.'s allegations had the required 'systemic effect' such that K.T. was denied equal access to educational opportunities provided by Culver-Stockton. The complaint

therefore failed to state a claim of peer harassment under Title IX." *K.T. v. Culver-Stockton*, 865 F.3d at 1059.

The instant case is distinguishable from *K.T. v. Culver-Stockton* for two reasons: first, K.T. was not a student at the college which she alleged acted with deliberate indifference; second, K.T. was a singular plaintiff, and for that reason, the Court found that neither the alleged misconduct nor the college's response to her allegations had the required systemic effect.  This case involves multiple plaintiffs alleging repeated failures in the University's Title IX response, such that a reasonable jury could find that there was a systemic effect on the Plaintiffs based upon the Defendants' deliberate indifference.  That systemic failure deprived each of the Plaintiffs of equal access to their educational opportunities; in fact, some of the Plaintiffs had to leave the University to attend other schools.  The deliberate indifference in this case is the pattern of repeated failures inherent in the University's faulty Title IX response process.  The University had actual knowledge of discrimination based upon the repeated complaints the Plaintiffs made about their Title IX response process over the course of years.

In *Shank v. Carleton College*, the defendants' initial motion to dismiss was denied.  On the defendants' motion for summary judgment, after discovery, the Court affirmed the District Court's order granting summary judgment in favor of the college.  The Court found that the plaintiff did not present sufficient evidence to prove that the college's conduct rose to the level of deliberate indifference that caused her to experience, or made her vulnerable to, further harassment or assault.  The plaintiff in *Shank* participated in a meeting with the respondent voluntarily and objected to posters with images of her perpetrator on them; thus, the Court found that the sum of failures experienced by the plaintiff did not amount to deliberate indifference.  Here, the pattern of failures experienced by the Plaintiffs is significantly more severe.  Further, the pattern of failures is itself

direct evidence of students being made sequentially more vulnerable to further harassment and assault. As the evidence will demonstrate, perpetrators knew and took advantage of the University's lax approach to Title IX enforcement, and complainants decided not to bother reporting incidents of sexual misconduct because the University's inability to keep the campus safe was so well-known. Further, *Shank* is similar to *K.T.* as both cases involved one plaintiff/complainant, and therefore each plaintiff could not prove the requisite systemic effect based upon their singular experience. Conversely, the entire basis of Plaintiffs' Complaint is that they were systemically denied their Title IX and constitutional rights by Defendants. Thus, this Court must deny Defendants' Motion to Dismiss.

### E. Count V: Equal Protection Clause claim

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall…deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause is enforced through 42 U.S.C. § 1983, which reads:

> [e]very person who, under color of [law]… of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

*Ezell v. Fayetteville Pub. Sch*., No. 5:15-CV-05161 (W.D. Ark. Dec. 15, 2015), provides helpful guidance for analyzing Equal Protection Clause arguments with regard to sex discrimination claims:

> When enforcing the Equal Protection Clause, courts apply heightened scrutiny to government classifications that are based on certain protected characteristics. Where such classifications exist, proving that they violate the Equal Protection Clause does not require a showing of animus. Quite the opposite, in the case of gender classifications, the burden is on the state actor to prove that the classification is substantially related to an important government interest. E.g., *U.S. v. Virginia*,

> 518 U.S. 515 (1996) (rejecting state's offered justifications for banning women from military college); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (rejecting state's justifications for single-sex admissions policy to school of nursing); *Craig v. Boren*, 429 U.S. 190, 197 (1976) ("[C]lassifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."). The offered justification must, additionally, be exceedingly persuasive. 518 U.S. at 533; 458 U.S. at 724 ("[T]he party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an exceedingly persuasive justification for the classification."). *Ezell* at 15-16.

Plaintiffs' Complaint clearly outlines a systemic pattern of failures which are directed at women. The Complaint does not allege, for example, "Upon information and belief, Defendant Counley never asked a male student how short his skirt was" – clearly, this type of question was only directed at women.   In situations where Plaintiffs know how men were treated differently, those examples are provided, such as when only Plaintiff Davis – the female athlete – is made to address pregnancy rumors, or the multiple situations where male respondents are afforded leniency in the Title IX investigation and hearing process whereas female complainants are ignored or denied hearing and appeal opportunities.  Thus, the burden is on Defendants to show that these instances of female students being treated differently and worse than male students were substantially related to an important University interest.

Defendants argue that Plaintiffs fail to allege the violation of a clearly established constitutional right and that the right was "clearly established" at the time of the challenged conduct.  The Supreme Court has addressed this question:

> [T]he legal principle [must] clearly prohibit the offic[ial]'s conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity…. [C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the offic[ial]'s conduct does not follow immediately from the conclusion that the rule was firmly

17

established. *District of Columbia v. Wesby*, 583 U.S. --, 138 S. Ct. 577, 590 (2018)
(quotation marks, editorial marks, and citations omitted).

It is difficult to imagine a more clearly established right in the minds of Title IX administrators

than the right to equal protection, as they immerse themselves in this very question on a daily basis.

Further, Plaintiffs have more than met their burden to allege "unlawful, purposeful

discrimination." *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 722 (8th Cir. 1996).

In this section of their brief, Defendants appear to manipulate caselaw to make inaccurate

arguments. Defendants argue the following:

> …there is no clearly established law that creates a duty under the Due Process
> Clause that Universities protect postsecondary education students from assaults or
> harassment on the basis of sex by other students. In order to incur § 1983 liability,
> 'there must first be a violation of the plaintiff's constitutional rights.' *Roach v. City
> of Fredericktown*, 882 F.2d 294, 297 (8th Cir. 1989). Accordingly, because a liberty
> interest in bodily integrity under the circumstances alleged in this lawsuit is not a
> cognizable interest under the Due Process claim, Plaintiffs' substantive due process
> claim should be dismissed. Def. Br. Doc. 41 at 93.

In fact, the question being addressed in *Roach* is a *Monell* failure to train issue.[2] The Court is

attempting to determine the following, as written in the previous sentence: "Although the Court

does not discuss in detail the underlying constitutional violation and its interplay with the adequacy

of training issue, the Court stated at the outset that its task in this case was to determine 'if a

municipality can ever be held liable under 42 U.S.C. § 1983 for constitutional violations resulting

from its failure to train municipal employees.'" *Roach*, 882 F.2d at 298. Defendants also cut the

quote off mid-sentence, taking it out of context. The full quote is: "Thus, it is clear that the Court

recognized that in order for municipal liability to attach in a situation such as this, there must first

---

[2] "Local governing bodies (and local officials sued in their official capacities) can, therefore, be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decisionmaking channels." *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 659 (1978).

be an underlying violation of the plaintiff's constitutional rights by a municipal employee (for whose actions the City is, presumably, to be held accountable)." *Roach* asks whether there is municipal liability for failure to train in an employment setting. There is no discussion of bodily integrity nor are the legal questions in *Roach* comparable to those in Plaintiffs' Complaint, as the Complaint did not include a *Monell* claim. *Roach* is not applicable to the present case.

The remainder of the Defendants' arguments are so fact-intensive and rely on numerous misstatements of the facts as alleged in the Complaint that they are improper for consideration by this Court at this juncture. Thus, this Court must deny the Motion to Dismiss.

## II.    OPPOSITION TO MOTION TO SEVER

The Plaintiffs and Defendants are properly joined under Rule 20 because Plaintiffs' claims arise out of the same transaction or occurrence and have common questions of law and fact. The Eighth Circuit has held that where joined Plaintiffs allege injury caused by a policy or practice of discrimination, the same transaction or occurrence test is satisfied, notwithstanding factual differences between each plaintiff's claim. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333-34 (8th Cir. 1974). Defendants rely on *Harris v. Union Pac. R.R. Co.*, No. 8:16CV381(D. Neb. Aug. 5, 2020) to try to refute the great weight of other cases following *Mosley* in arguing what constitutes the same transaction or occurrence. While the court in *Harris* noted that "[t]he Eighth Circuit has embraced a liberal reading of the same transaction and occurrence language, finding it permits joinder of all reasonably related claims for relief by or against different parties," (citing *Tridle* 2009 WL 1783558, at *2), and that "[a]ll logically related events entitling a person to institute legal action against another generally are regarded as comprising a transaction or occurrence," (citing *Mosely*, 497 F.2d at 1333), it "nevertheless" found that the claims in *Harris* "hinge[d] on distinct facts that are unique to each plaintiff and, thus, do not arise out of the same

19

transaction or occurrence." 2020 WL 4504392, at *2 (citing *Payne v. Grant County, Okla.*, No. CIV–14–362–M, 2014 WL 3349617, at *2 (W.D. Okla. July 8, 2014) (holding that two terminations–one allegedly based on age and gender, and one based on retaliation for the other plaintiff's complaints–were based on different sets of facts)). *Harris* is a minority holding among Rule 20 precedents in this Circuit.

Perhaps explaining this discrepancy, it should be noted that the District Court's decision in *Harris* was made, at least in part, to be cohesive with the Eighth Circuit's prior reversal of class certification in that case. 2020 WL 4504392, at *2 (citing *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020)). In assessing class certification under Rule 23, the Eighth Circuit found that the District Court would have to make individual determinations though "an examination of each plaintiff's medical condition, position, and job responsibilities." *Id.* Accordingly, the District Court found that because they would already have to be making these individual determinations, the claims should be severed. *Id.*

Here, there are no such issues. Plaintiffs have not sought class certification. A determination that each Plaintiff's case needs to be investigated individually would be unnecessary in this case. Where the plaintiffs in *Harris* had a variety of conditions, positions, and jobs, the Plaintiffs here all have substantially similar claims based on the same injuries, based on strikingly similar facts. Rather, like the *Harris* court noted before ruling to the contrary, most frequently, "[t]he Eighth Circuit has embraced a liberal reading of the same transaction and occurrence language, finding it permits joinder of all reasonably related claims for relief by or against different parties." 2020 WL 4504392, at *2 (citing *Tridle v. Union Pacific Railroad Company*, No. 8:08CV470, 2009 WL 1783558, at *2 (D. Neb. June 22, 2009)).

Defendants argue that there is no question of law or fact common to the Plaintiffs and Defendants in this case. They rely on *Harris*, which should be distinguished for the reasons outlined above. Defendants seem to lose the forest for the trees, highlighting small differences between the Plaintiffs' factual circumstances. *See e.g.*, Def. Br. Doc. 41 at 93. While the circumstances that brought the Plaintiffs to seek help from the University may have varied, each of the Plaintiffs are alleging the same primary injury: their rights were violated as a result of Defendants' actions and inactions in the Title IX process. There are individuals, circumstances, and behaviors—in other words, facts—that overlap and are common to each Plaintiff and Defendant. As outlined extensively in the Complaint, there are common issues of law with respect to deliberate indifference and the systemic pattern of failures by the University.

Defendants also point to a Northern California case and a case out of the Federal Circuit to argue that the analysis in Rule 20(a) and Rule 23(b) overlap. Def. Br. Doc. 41 at 94 (citing *Tood v. Tempur-sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2017 WL 2840272, at *2 (N.D. Cal. June 30, 2017) and *In re EMC Corp.*, 677 F.3d 1351, 1355 *Fed. Cir. 2012). The Eighth Circuit in *Mosley* noted this helpful overlap as well. 497 F.2d 1330 at 1334. In *Mosley*, the Court first noted that the common question of law or fact requirement in Rule 20(a) does not require that all questions of law or fact be common. *Id.* Then, the Court looked to Rule 23(a) for guidance and found that "[i]n general, those cases that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of context." *Id.* Applying this guidance to its Rule 20(a) determination, the Court found that the existence of a discriminatory policy threatens the entire class, and whether or not there is such discrimination is a question of fact common to all members of that class. *Id.* (*citing Hall v. Werthan Bag Corp.*, 251 F.Supp. 184, 186 (M.D. Tenn.1966) ("Although the actual effects of a discriminatory policy may thus vary

21

throughout the class, the existence of the discriminatory policy threatens the entire class.  And whether the Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class.")).  Furthermore, the Court held that "the fact that each plaintiff may have suffered different effects from the alleged discrimination is immaterial for the purposes of determining the common question of law or fact."  *Id*.  Plaintiffs here suffered Title IX violations at the hands of a small group of actors, the named Defendants.  This constitutes a threat to the Plaintiffs' entire class, which satisfies the commonality requirement of Rule 20(a).

Finally, Defendants argue that the Plaintiffs' claims should be severed to avoid a risk of jury confusion and prejudice to the Defendants.  To support this argument, Defendants paraphrase *Harris* and cite a series of cases that were cited in that case, in which courts analyzed danger of jury prejudice.  *Compare* Def. Br. Doc. 41 at 95-96 *with Harris*, 2020 WL 4504392, at *4.  This will not be an issue.  A jury will not be "required to compartmentalize the evidence to the nine identified Plaintiffs and the corresponding implicated Defendants, and then determine whether each of the Plaintiffs satisfied the elements of each of the claims asserted by the Plaintiffs."  Def. Br. Doc. 41 at 95-96.  The types of evidence will be substantially similar, and the Plaintiffs' case will be based in establishing a pattern and practice.

The analysis in *Harris* is distinguishable from the Plaintiffs' situation.  In one sense, joinder is a balancing test between judicial economy and possible prejudice and confusion.  See *Harris*, 2020 WL 4504392, at *4 (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 615, 521 (5th Cir. 2010) ("[D]istrict courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims.")  In *Harris*, that balancing test favored the defendants because there was

little to gain for judicial economy. *Id*. The plaintiffs in *Harris* argued that severance "would result in duplicative discovery in motion practice," and they argued that severance should be considered after the close of discovery and summary judgement proceedings—as Plaintiffs do here. *Id*. But in *Harris*, the court found that the majority of discovery had been completed, and that any discovery that was left would be individualized. *Id*. Thus, possible prejudice outweighed judicial economy. Here, there is a lesser risk of prejudice and more guaranteed judicial economy. There is significant overlap in each Plaintiffs' facts. These overlaps and patterns will become clear in discovery, which will involve similar records stored in the same places, and they will thus be easy for a jury to follow. Similarly, the overlaps in the relevant legal standards will be easy to follow. Finally, as this litigation is still in its early stages, it is more economical to keep this lawsuit intact to prevent duplicative motions and discovery requests. Thus, the benefits to judicial economy are high and the risks of prejudice are low, making joinder proper under Rule 20.

As stated above, Plaintiffs maintain that *Mosley* provides the standard to assess the motion to sever. However, if the Court were inclined to utilize the standard put forth by Defendants, Plaintiffs would still prevail. The standard in *Lustgraaf* lays out five considerations for a motion to sever, "including (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the presentation of different evidence, (3) the convenience of the parties, (4) possible prejudice to the parties, and (5) whether severance will promote judicial economy and expeditious resolution of the case." *Lustgraaf*, 2013 WL 12121198, at *1. First, the Plaintiffs' claims are not significantly different from one another. Each addresses the named defendants, who together form the responsible parties, and there are clear facts and fact patterns in common. Second, while individual pieces of evidence may differ, they are largely of the same type, namely correspondence, reports, records, etc., and it is reasonable to

believe that the evidence being sought by the Plaintiffs will overlap significantly. Third, it would be convenient for Plaintiffs, and likely Defendants and the Court, to keep these issues contained in one lawsuit when there is so much overlapping material. Fourth, severing the Plaintiffs would be unfairly prejudicial. Plaintiffs believe the evidence will show patterns of violations that amount to deliberate indifference. Indeed, this is likely why Defendants have moved to sever. They recognize that the burden is greater for each Plaintiff to have to establish patterns among the Defendants separately. Fifth, severance would not promote judicial economy, nor would it reduce jury confusion and prejudice. If the parties were severed, there would be multiple cases proceeding on different schedules. Again, while Plaintiffs argue that *Mosley* should be the standard, application of the *Lustgraaf* considerations should result in the Court overruling the motion to sever.

In sum, Plaintiffs and Defendants in this case are properly joined under Rule 20. The issues here arise out of the same series of transactions or occurrences and the major questions of law and fact are common. Joining the Plaintiffs and Defendants as proposed in the Complaint fulfills the purpose of Rule 20 by "promot[ing] trial convenience and expedit[ing] the final determination of disputes, thereby preventing multiple lawsuits." *Mosley*, 497 F.2d 1332. Thus, the Motion to Sever must be denied.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss with respect to Counts I, II, and V of the Second Amended Complaint and deny Defendant's Motion to Sever. Plaintiffs consent to dismissal of Counts III, IV, VI, VII, VIII, IX, and X.

DATED:        June 7, 2021              Respectfully submitted,


**s/ Karen Truszkowski**
Bar Number: P56929 (MI)
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
Telephone: (844) 534-2560
Fax: (800) 531-6527
Email: karen@temperancelegalgroup.com

**s/ Elizabeth K. Abdnour**
Bar Numbers: 0081795 (OH), P78203 (MI)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw St., Ste. 4A-2
Lansing, MI 48915
Telephone: (517) 292-0067
Fax: (517) 709-7700
Email: elizabeth@abdnour.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, I certify that based upon the word count function of Microsoft Word for Mac word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, this Brief contains 8096 words.

<u>**s/ Elizabeth K. Abdnour**</u>
Elizabeth K. Abdnour
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

<u>**s/ Elizabeth K. Abdnour**</u>
Elizabeth K. Abdnour
Attorney for Plaintiffs

26