# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

SHERIDAN THOMAS, MIRANDA ) 
MELSON, JANE DOE 1, JANE DOE 2, ) 
SYDNEY BRUN-OZUNA, JANE DOE 3, ) 
CAPRI DAVIS, JANE DOE 4, JANE DOE 5, ) 
and OTHER UNIDENTIFIED FEMALE DOES, ) 
  ) 
      Plaintiffs, ) 
  )       Case No.
      v. )   4:20-cv-03081-RFR-SMB
  ) 
BOARD OF REGENTS OF THE UNIVERSITY ) 
OF NEBRASKA, and individuals PETE JEYARAM, ) 
LAURIE BELLOWS, JAKE JOHNSON, ) 
MATTHEW HECKER, TAMIKO STRICKMAN, ) 
JEFF LAMOUREAUX, MEAGAN COUNLEY, ) 
RYAN FETTE, BRIANA PALLAS-SEARS, ) 
SUE KELLY MOORE, SANDRA CHAVEZ, and ) 
JAMIE PEER, individually and in their official ) 
capacities, and OTHER UNIDENTIFIED ) 
DEFENDANTS, ) 
  ) 
      Defendants. ) 
_____ )

## UNITED STATES' STATEMENT OF INTEREST

## INTRODUCTION

The United States respectfully submits this Statement of Interest, under 28 U.S.C. § 517,[1] to explain the legal standards governing peer sexual harassment and retaliation claims for damages under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, and how those standards apply to Plaintiffs' claims in this case. The United States has a significant interest in the proper interpretation of Title IX and in ensuring that federally funded schools meet their Title IX obligations to provide a safe, nondiscriminatory learning environment by responding appropriately to reports of sex discrimination. The United States Departments of Justice and Education share responsibility for ensuring that funding recipients comply with Title IX. In addition to its own enforcement interest, the United States has an interest in ensuring effective private enforcement of Title IX.

The nine Plaintiffs in this case are all current or former students of the University of Nebraska-Lincoln ("the University" or "UNL") and allege that they were raped, sexually assaulted, sexually harassed, and/or stalked by other UNL students. All of the Plaintiffs allege that they, their friends, or another source reported this misconduct—either to UNL's Office of Institutional Equity and Compliance, which houses UNL's Title IX Office, or to other UNL employees. Six of the nine Plaintiffs also allege some form of post-report peer retaliation or harassment, which they also reported, and five of these six Plaintiffs allege that UNL did not investigate the reported retaliation and/or harassment, including verbal harassment by two alleged perpetrators and their friends that led to a serious physical assault of one of the Plaintiffs.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

Count I of Plaintiffs' complaint alleges that UNL's deliberately indifferent responses to the sexual misconduct and retaliation by peers created a hostile educational environment that denied them the benefits of UNL's education programs in violation of Title IX.  Count II of Plaintiffs' complaint alleges that in response to their reports, UNL engaged in retaliatory adverse actions against them in violation of Title IX and its regulations.

UNL has moved to dismiss Plaintiffs' Title IX claims under Federal Rule of Civil Procedure 12(b)(6).  UNL argues that Plaintiffs fail to state plausible Title IX claims for damages under *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), and other decisions governing peer sexual harassment claims.  But UNL misunderstands Plaintiffs' legal theories and misapplies the case law.  In particular, UNL mistakenly conflates the distinct standards for "post-assault" claims (which focus on how a recipient responded *after* it received actual notice of a plaintiff's sexual assault), and "pre-assault" claims (which focus on what the recipient knew *before* the plaintiff's sexual assault).  The Plaintiffs in this case have brought only post-assault claims against UNL.  Below the United States sets forth the proper legal standards applicable to these post-assault claims.  The United States also provides the legal standards for Plaintiffs' claims based on UNL's alleged retaliation and its alleged failures to investigate known peer retaliation.

## ARGUMENT

In moving to dismiss Plaintiffs' Title IX damages claims for peer sexual harassment and retaliation, UNL primarily argues that the allegations supporting these claims fail to meet the liability standards under *Davis* and other Title IX case law in several ways.  *See, e.g.*, Br. in Supp. of Defs.' Mot. to Dismiss & to Sever ("Br."), 44-48, 60, 64-68, ECF No. 41.  Because UNL's arguments largely misapply the Title IX case law, including by erroneously applying the

"pre-assault" liability standards to Plaintiffs' post-assault claims, this Statement of Interest clarifies this case law for the Court and articulates the legal standards applicable to Plaintiffs' claims.  The United States takes no position on whether Plaintiffs' allegations state plausible Title IX claims for damages under these standards.

## I.      Title IX's Liability Standards for Peer Sexual Harassment Claims

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). Title IX's dual goals are to (1) "avoid the use of federal resources to support discriminatory practices" and (2) "provide individual citizens effective protection against those practices."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (internal quotation marks omitted) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979)).  Individuals have an implied private right of action to enforce Title IX's prohibition on intentional sex discrimination.  *Cannon*, 441 U.S. at 702-03.

### A.  Peer Sexual Harassment Claims for Damages

In *Davis*, the Supreme Court held that, under certain circumstances, peer sexual harassment may give rise to a private Title IX claim for intentional sex discrimination seeking damages against a recipient of federal funds.  526 U.S. at 646-47.  To state a plausible Title IX claim for damages, a plaintiff must allege that: (1) the recipient had actual knowledge of peer sexual harassment, *id.* at 650; (2) the recipient responded to this knowledge with deliberate indifference that "subject[ed] [the plaintiff] to harassment" by either "caus[ing] [the] student[] to undergo harassment or mak[ing] them liable or vulnerable to it," *id.* at 644-45 (internal quotation marks omitted); and (3) the harassment to which the student has been subjected is "so severe,

3

pervasive, and objectively offensive that it effectively bars the [student's] access to an educational opportunity or benefit."  *Id.* at 633.

 In light of the various contexts in which peer sexual harassment may occur, post-*Davis* case law developed "post-assault" and "pre-assault" claims to distinguish between two theories of liability for Title IX damages claims.  *See, e.g., Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1099 (9th Cir. 2020) (explaining that a "pre-assault claim" "relies on events that occurred before [the plaintiffs'] assaults"); *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 970 (N.D. Cal. 2020) (explaining that a "post-assault claim" is premised on "a school's response to a [plaintiff's] complaint of sexual misconduct" after the assault).

Plaintiffs in this case bring only post-assault claims.  Post-assault claims, like the claim in *Davis*, focus on how a recipient responded *after* it received actual notice of a plaintiff's sexual harassment.  Courts consistently have applied *Davis*'s three-part framework to post-assault claims.  *See, e.g., Shank v. Carleton Coll.*, 993 F.3d 567, 573-76 (8th Cir. 2021) (applying *Davis*'s three-part framework to a post-assault claim); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171-73 (1st Cir. 2007) (same), *rev'd on other grounds*, 555 U.S. 246 (2009); *Farmer v. Kan. State Univ.*, Case No. 16-CV-2256-JAR-GEB, 2017 WL 3674964, at *4 (D. Kan. Aug. 24, 2017) (same), *aff'd*, 918 F.3d 1094 (10th Cir. 2019); *see Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 658 (W.D. Tex. 2017) (referring to plaintiffs' post-assault claims as "post-reporting" claims that use *Davis*'s "traditional" framework).  Under this framework, a plaintiff must allege actual knowledge by the federal funding recipient of a sexual assault or other sexual harassment "that is so severe, pervasive, and objectively offensive that it effectively bars the [plaintiff]'s access to an educational opportunity or benefit."  *Davis*, 526 U.S. at 633.  A plaintiff also must allege that the funding recipient responded to this knowledge with deliberate indifference.  *Id.*

To plausibly plead deliberate indifference for a post-assault claim, plaintiffs may allege facts showing either that the school's response (or lack thereof) caused them to undergo further harassment (which we refer to as the "cause to undergo" prong) *or* made them vulnerable to potential further harassment (which we refer to as the "make vulnerable" prong), or both. *See Davis*, 526 U.S. at 645; *see also Shank*, 993 F.3d at 573 ("Critically, the institution's deliberate indifference must 'cause[] students to undergo harassment' or 'ma[ke] them liable or vulnerable to it.'") (quoting *Davis*, 526 U.S. at 645); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057-58 (8th Cir. 2017) (same) (quoting *Davis*, 526 U.S. at 644-45); *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (same) (citing *Davis*, 526 U.S. at 645). In evaluating claims brought under the "cause to undergo" prong, the Eighth Circuit has stated that plaintiffs are required to identify a "causal nexus" between the school's deliberate indifference and the plaintiffs' "experiencing sexual harassment." *K.T.*, 865 F.3d at 1058.[2]

## B. Plaintiffs' Post-Assault Claims Against UNL

### 1. The Court Should Analyze Plaintiffs' Post-Assault Claims Under *Davis* and Reject UNL's Misreading of the Title IX Case Law

In their Second Amended Complaint, Plaintiffs allege that UNL responded with deliberate indifference after it received actual notice of their sexual harassment. Pls.' Sec. Am. Compl. & Jury Demand, ¶¶ 749-60, ECF No. 29. As explained above, this constitutes a post-assault theory of relief. As such, the Court simply needs to apply *Davis*'s three-part framework to determine if Plaintiffs state a plausible claim under Title IX. UNL's motion to dismiss

---

[2] In *K.T.*, the plaintiff was a high school potential recruit (not a student at the college) and therefore did not and could not allege that the college's deliberate indifference to her sexual assault on a recruitment trip made her vulnerable to further harassment under *Davis*'s "make vulnerable" prong. *See* 865 F.3d at 1056, 1058. As a result, the Eighth Circuit analyzed K.T.'s post-assault and pre-assault claims only under *Davis*'s "cause to undergo" prong and dismissed both because her allegations did not identify a "causal nexus" between the college's inaction and her sexual assault on the recruiting trip. *Id.* at 1058-59.

Plaintiffs' sexual harassment claims for damages confuses this straightforward analysis by making four arguments that misapply *Davis* and the Eighth Circuit's Title IX case law.

First, UNL argues that Plaintiffs' sexual assault and harassment claims should be dismissed for failing to allege that UNL had actual knowledge that the alleged harassers posed a prior substantial risk of sexual harassment.  As explained below, this requirement applies in the context of *pre-assault* claims.  Because Plaintiffs raise *post-assault* claims, they need only allege that UNL had actual knowledge of their reported sexual assaults and harassment.

Second, UNL argues that Plaintiffs' claims fail because Plaintiffs do not allege that UNL's deliberate indifference caused them to be harassed again by the same harassers.  Yet Plaintiffs' post-assault claims may proceed under either of *Davis*'s prongs for establishing deliberate indifference.  Those that proceed under the "cause to undergo" prong need not allege that the additional harassment was by the same harassers, and those that proceed under the "make vulnerable" prong need not allege any additional actual harassment.

Third, UNL argues that Plaintiffs' claims fail because a single instance of sexual misconduct cannot meet *Davis*'s "severe and pervasive" harassment requirement.  To the contrary, post-*Davis* case law makes clear that a single rape or sexual assault can meet this standard.

 Fourth, UNL argues that Plaintiffs' sexual harassment claims fail because they do not allege that the harassers were motivated by hostility toward the Plaintiffs' gender.  But sexual harassment claims need not allege hostility under *Davis*, especially where the Eighth Circuit recognizes sexual harassment as a form of sex-based discrimination.

### a. Because Plaintiffs Bring Post-Assault Claims, They Need Not Allege that UNL Had Actual Knowledge of a Prior Substantial Risk of Sexual Assault

In seeking to dismiss Plaintiffs' Title IX sexual harassment claims, UNL argues that Plaintiffs must allege that UNL had actual knowledge of a prior substantial risk of harassment by the alleged harassers. *See* Br. at 44-45 (arguing that a certain Plaintiff's claim must fail because she did not allege that UNL "had actual knowledge that [the alleged harasser] posed a substantial risk of sufficiently severe harm to students based on [the alleged harasser's] previous known conduct"), 50, 55, 58, 63, 65, 67, 68 (same). Knowledge of a prior substantial risk of harassment is only required in the context of *pre-assault* claims, not post-assault claims.

In a typical pre-assault claim, a plaintiff asserts that a school's deliberate indifference to a known, substantial risk of sexual harassment causes or leads to subsequent sexual harassment or assault of the plaintiff. *See K.T.*, 865. F.3d at 1058 (to state a pre-assault claim, "a plaintiff must allege that the funding recipient had *prior notice* of a substantial risk of peer harassment 'in the recipient's programs'") (emphasis in original) (quoting *Gebser*, 524 U.S. at 290); *Thomas v. Bd. of Trs. of the Neb. State Colls.*, No. 8:12-CV-412, 2015 WL 4546712, at *1 (D. Neb. July 28, 2015) (requiring for a Title IX claim that the school "had actual knowledge that [the alleged harasser] . . . posed a substantial risk of harm to [the plaintiff]" and the school, "through deliberate indifference, exposed [the plaintiff] . . . to that harm"), *aff'd*, 667 Fed. App'x 560 (8th Cir. 2016) (per curiam). Courts analyzing such claims, including the Eighth Circuit, thus consider whether a school possessed actual knowledge of such a risk and responded with deliberate indifference to that risk prior to the plaintiff suffering sexual harassment or assault. *See, e.g.*, *K.T.*, 865. F.3d at 1059 (affirming the dismissal of a pre-assault claim where the plaintiff's complaint "lack[ed] any assertion that [the college] knew—prior to the alleged assault

on [the plaintiff]—that individuals in the [c]ollege's soccer recruiting program faced a risk of sexual harassment").

Here, because none of the Plaintiffs raises a pre-assault claim that UNL's actions or inactions caused their sexual assault or harassment, they need not allege that UNL possessed actual knowledge of a prior substantial risk of harassment.  Rather, for their post-assault claims, they must allege that (1) UNL had actual knowledge that *Plaintiffs themselves* suffered sexual assaults and harassment (e.g., through Plaintiffs' reports to UNL employees) and (2) UNL's deliberately indifferent response to that knowledge subjected them to discrimination by causing them to undergo further harassment or making them vulnerable to potential further harassment, or both.

### b. Plaintiffs Need Not Allege Further Harassment by the Same Harasser Under the "Cause to Undergo" Prong or the "Make Vulnerable" Prong for Their Post-Assault Claims

UNL argues that Plaintiffs' sexual assault and harassment claims fail because Plaintiffs do not allege that UNL's deliberate indifference caused them "additional harassment" by the same harassers.  *See, e.g.*, Br. at 55, 58, 62, 63, 65, 67.  For those Plaintiffs who allege "additional harassment," UNL also argues that their claims should be dismissed for failing to identify a "causal nexus" between UNL's deliberate indifference and the sexual misconduct they experienced.  *See id.* at 42, 47, 55, 60, 64, 66.  Again, UNL conflates and misunderstands the different ways Plaintiffs can demonstrate deliberate indifference under *Davis*'s two prongs.

For those Plaintiffs who allege post-report peer harassment and proceed under *Davis*'s "cause to undergo" prong,[3] UNL is correct that they must allege that they suffered additional harassment after they reported their initial experience of sexual harassment and assault to UNL.

---

[3] These Plaintiffs are Doe 1, Doe 2, Doe 3, Davis, Doe 4, and Doe 5.

UNL is also correct that their allegations need to identify a "causal nexus" between UNL's conduct and their experience of harassment.  *See K.T.*, 865 F.3d at 1058; *Shank*, 993 F.3d at 573. UNL is wrong, however, to suggest that such harassment must be committed by the same person who committed the prior acts of sexual harassment or assault and that the subsequent harassment must always be "sexual" or otherwise "on the basis of sex."  *See, e.g.*, Br. at 63, 65.  Certainly, subsequent sexual harassment by the same individual can support a claim of deliberate indifference under Title IX, as was the case in *Davis*.  *See* 526 U.S. at 649-50.  Subsequent harassment (whether sexual or not) committed by another individual can also suffice so long as there exists a "causal nexus" between the school's deliberate indifference to the initial instance of harassment and the later harassment that occurs.  *Cf. Shank*, 993 F.3d at 576.  For example, apart from any later sexual harassment, a peer's retaliatory harassment against a student who reported sexual harassment to the school can suffice as further harassment under *Davis*'s "cause to undergo" prong, even where the retaliator is not the original harasser.  *See infra* pt. II.A. and II.B.

Plaintiffs who proceed under *Davis*'s "make vulnerable" prong[4] need not allege that UNL's deliberate indifference to their reported sexual assaults and harassment caused them to undergo any actual further harassment.  Plaintiffs need only allege that UNL's deliberately indifferent response made them vulnerable to potential further harassment.  UNL's arguments to the contrary and its reliance on *K.T.* are mistaken.  *See* Br. at 41-43, 47, 55, 58, 60, 62, 63, 65, 67.

UNL invokes *K.T.* to argue that the Plaintiffs—even those proceeding under the "make vulnerable" prong—must allege that UNL's deliberate indifference caused them to be harassed

---

[4] Plaintiffs Thomas, Melson, and Brun-Ozuna do not allege post-report harassment and proceed only under the "make vulnerable" prong.

again by the same perpetrator and identify a "causal nexus" or "causal connection" between the deliberate indifference and the harassment they experienced. *See id.* at 42, 47, 55, 60, 64, 65, 66, 67. This argument ignores *Davis*'s "make vulnerable" language and the specific facts in *K.T.* As noted above, *supra* at 5 n.2, *K.T.* arose in a different context than this case and most other Title IX sexual assault cases. As a non-student who did not attend the college, K.T. could not and did not allege that the college's failure to investigate her reported sexual assault on the recruitment trip "made [her] vulnerable" to harassment. As a result, the Eighth Circuit considered her allegations only under the "cause to undergo" prong, concluding that K.T. had failed to identify a specific "causal nexus between [the college's] inaction and [K.T.] experiencing sexual harassment." *K.T.*, 865 F.3d at 1058; *see Farmer*, 918 F.3d at 1104, 1108 (internal quotation marks omitted) (distinguishing *K.T.* on the grounds that "there was no opportunity for further harassment because the victim did not attend the school" and holding that plaintiffs can state viable Title IX peer sexual harassment claims by alleging that the school's "deliberate indifference caused them to be vulnerable to further harassment without requiring an allegation of subsequent actual sexual harassment").

Neither *K.T.* nor *Shrum* (on which *K.T.* relied) turned on the "make vulnerable" prong, and both acknowledge this prong as a viable way to allege deliberate indifference, as did the more recent Eighth Circuit decision, *Shank*. *See K.T.*, 865 F.3d at 1057; *Shrum*, 249 F.3d at 782; *Shank*, 993 F.3d 573, 575, 576. Indeed, in *Shank*, the Eighth Circuit applied the "make vulnerable" and the "cause to undergo" prongs to the plaintiff's post-assault claim for damages at the summary judgment stage but found the evidence insufficient under both prongs. 993 F.3d at 575 (finding "[s]he has not presented evidence that [the college's deliberate indifference]

10

'caused' her to experience sexual harassment or made her 'vulnerable to it'") (quoting *Davis*, 526 U.S. at 645).

UNL's reading of *K.T.* and *Davis* would require the court to ignore the plain meaning of "make liable or vulnerable" in *Davis*, collapse *Davis*'s two distinct prongs into one, and render *Davis*'s vulnerability prong superfluous. As the Tenth Circuit explained in *Farmer*, "[t]o underscore that a Title IX plaintiff is not required to allege that she suffered actual additional incidents of sexual harassment, the Supreme Court in *Davis* referred to the Random House Dictionary definition of 'subject' to include, 'to make liable . . . ; lay open; expose.'" 918 F.3d at 1104 (quoting *Davis*, 526 U.S. at 645). To require "that a student must be harassed or assaulted a second time before the school's clearly unreasonable response to the initial incident becomes actionable, irrespective of the deficiency of the school's response, the impact on the student, and the other circumstances of the case . . . runs counter to the goals of Title IX and is not convincing." *Id.* (internal quotation omitted). Like the Tenth Circuit in *Farmer*, the First and Eleventh Circuits also have declined to apply a requirement of further actual harassment to Title IX sexual harassment claims. *See Fitzgerald*, 504 F.3d at 172 ("[M]ak[ing] them liable or vulnerable to" harassment "sweeps" broader than requiring further actual harassment to have occurred) (internal citation omitted); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1296-97 (11th Cir. 2007) ("Based on the *Davis* Court's language, we hold that a Title IX plaintiff . . . must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination," which includes "effectively

11

denying [a student] an opportunity to continue to attend [the school]" without further harassment).[5]

### c. A Single Instance of Rape or Sexual Assault Can Be Sufficiently Severe, Pervasive, and Objectively Offensive to Support a Post-Assault Claim

In seeking to dismiss Plaintiffs' Title IX sexual harassment claims, UNL argues that a single instance of sexual misconduct cannot meet *Davis*'s requirement that the sexual harassment be "pervasive." *See, e.g.*, Br. at 47-48, 52, 57, 66-67. For support, UNL cites *Davis* and *K.T. See id.* at 40, 43, 48-49. But UNL misunderstands *Davis*, ignores the consensus that has emerged in the federal courts following *Davis*, and misapplies *K.T.*

As an initial matter, UNL relies on dicta in *Davis* that the Court itself recognized as speculative. There, the Court stated, "in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to" have the systemic effect of denying the victim equal access to an educational program or activity, but suggested "it [was] unlikely that Congress would have thought such behavior sufficient to rise to this level." *Davis*, 526 U.S. at 652-53. This was not the holding in *Davis* because that case was not premised on a single instance of harassment and did not involve allegations of rape. Rather, it involved "a prolonged pattern of sexual harassment" by one fifth-grade student against another. *Id.* at 633. *Davis* thus did not

---

[5] *See also Spencer v. Univ. of N.M. Bd. of Regents*, No. 15-CV-141-MCA-SCY, 2016 WL 10592223, at *6 (D.N.M. Jan. 11, 2016) ("In the context of Title IX, 'there is no "one free rape" rule'; and a victim does not have to be raped twice before the school is required to respond appropriately.") (quoting *S.S. v. Alexander*, 177 P.3d 724, 741 (2008)). The Sixth Circuit stands alone in holding that a plaintiff must allege deliberate indifference that caused the plaintiff to suffer further harassment by the same perpetrator. *See Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 554 (Oct. 13, 2020). The Sixth Circuit's decision in *Kollaritsch* is inconsistent with Eighth Circuit precedent recognizing that deliberate indifference by a school that makes a student vulnerable to further harassment will suffice under *Davis*. *Kollaritsch* also relies on reasoning that is inconsistent with Title IX's goals, misinterprets *Davis*, and leads to the absurd result of requiring students to be sexually harassed or assaulted at least *twice* before a school can be held liable in damages for its deliberate indifference to known harassment. This outcome cannot be squared with Title IX's text and goal of providing "individual [students with] effective protection against [discriminatory] practices." *Cannon*, 441 U.S. at 704.

foreclose the possibility that a single rape or other sexual assault could have a sufficiently pervasive effect to support a claim under Title IX.

Indeed, in the years following *Davis*, many courts correctly recognized that a single instance of rape or sexual assault can have an effect so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.[6] These cases recognize that the traumatic effects of student-on-student rape are not limited to the event itself, but instead can permeate the educational environment and effectively bar the victim's access to the opportunities and benefits offered by the school. *See, e.g.*, *Williams*, 477 F.3d at 1297-99 (finding that a rape was sufficiently "pervasive" and that the university's deliberately indifferent response to the assault effectively barred the plaintiff's access to an educational opportunity or benefit because "the discrimination in which [the university] engaged or allowed to occur on campus caused [plaintiff] to withdraw and not return"); *Jennings v. Univ. of N.C.*, 444 F.3d 255, 268, 274 n.12 (4th Cir. 2006) (acknowledging that a single incident of sexual assault or rape could be sufficient to raise a jury question about whether a hostile environment exists); *see also Wills v. Brown Univ.*, 184 F.3d 20, 37 (1st Cir. 1999) ("The effect of such abusive conduct on a victim does not necessarily end with a cessation of the abusive conduct, particularly if the victim and the abuser retain the same or similar roles in an

---

[6] This well-established interpretation of Title IX is consistent with the Department of Education's position since 1997 and in its current 2020 Title IX regulations: schools must respond to incidents of sexual assault or rape of which they have notice. *See* 34 C.F.R. § 106.44(a) (2020); 85 Fed. Reg. 30,036 (May 19, 2020) ("In these final regulations, the Department retains reference to sexual assault under the Clery Act, and additionally incorporates the definitions of dating violence, domestic violence, and stalking in the Clery Act as amended by VAWA. Incorporating these four Clery Act/VAWA offenses clarifies that sexual harassment includes a single instance of sexual assault, dating violence, domestic violence, or stalking. Such incorporation is consistent with the Supreme Court's observation in *Davis* that a single instance of sufficiently severe harassment on the basis of sex *may* have the systemic effect of denying the victim equal access to an education program or activity.") (emphasis in original) (internal citations omitted).

educational institution.") (Lipez, dissenting).[7]  UNL ignores this line of case law, citing instead to *K.T.* for the proposition that single acts of sexual misconduct do not suffice under *Davis*.  *See, e.g.*, Br. at 48.

Once again, UNL's argument misreads and misapplies *K.T.*, a case involving a non-student, to student Plaintiffs' claims against UNL.  *K.T.* involved a single incident of sexual assault suffered by a high school student during a recruiting trip to the college, and in that context, the Eighth Circuit said that the "singular grievance on its own does not plausibly allege pervasive discrimination as required to state a peer harassment claim."  865 F.3d at 1056, 1059 (relying on *Davis*'s dicta described above).  But in the sentence that immediately follows, the Eighth Circuit concluded that K.T.'s complaint "lack[ed] factual content allowing [the court] to conclude that either the alleged misconduct or [the college's] response to [the plaintiff's] allegations had the required 'systemic effect' such that [she] was denied equal access to educational opportunities provided by [the college]."  *Id.* at 1059 (citations omitted).  As a practical matter, K.T.'s sexual assault could not have had such an effect given that she was a 16-year-old potential recruit and not a student at the college.  *Cf. Farmer*, 918 F.3d at 1108 (distinguishing *K.T.* on the grounds that "there was no opportunity for further harassment because the victim did not attend the school").  Plaintiffs' claims here against UNL are easily distinguishable from K.T.'s.

Contrary to UNL's suggestion, single acts of rape or other sexual assault may be sufficiently severe and pervasive under *Davis* when the rape or assault is of a student by another student.  Neither the dicta in *Davis* nor *K.T.* preclude Plaintiffs, who were current UNL students

---

[7] *See also Spencer*, 2016 WL 10592223, at *6 (finding in a case involving off-campus rape that a "single act of severe sexual harassment—particularly a rape . . . can support a Title IX claim where the claim is premised upon the school's response to the report of the incident of sexual harassment") (internal citations omitted).

at the time of their incidents, from relying on single incidents of rape or sexual assault in alleging

Title IX violations based on UNL's deliberate indifference to such misconduct.

### d. Allegations of a Harasser's Hostility Toward a Victim's Gender Are Unnecessary When a Plaintiff Alleges Sexual Harassment or Assault

UNL argues that Plaintiffs' Title IX sexual harassment claims must be dismissed for

failure to allege hostility towards a victim's gender. *See* Br. at 48. This argument is incorrect

because *Davis* recognizes sexual harassment as a form of sex discrimination and does not require

a separate showing of gender-based hostility in a Title IX claim for damages based on sexual

harassment. *See supra* pt. I.A; *see also Gebser*, 524 U.S. at 283 (recognizing "the general

proposition that sexual harassment can constitute discrimination on the basis of sex under Title

IX"). Eighth Circuit case law confirms this conclusion. *See, e.g.*, *Shank*, 993 F.3d at 573 ("This

court treats peer sexual assault as a form of sex discrimination for Title IX purposes.") (citing

*K.T.*, 865 F.3d at 1058-59; *Maher v. Iowa State Univ.*, 915 F.3d 1210, 1213 (8th Cir. 2019)).

Accordingly, allegations of hostility to a victim's gender are unnecessary where, as here,

Plaintiffs have already alleged that they suffered harassment because of their sex.

The case UNL cites in support of its proposition primarily involved allegations of

harassment based on sexual orientation and nonconformity to stereotypical male characteristics.

*See Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 867 (8th Cir. 2011). There, the Eighth

Circuit considered whether "a plaintiff must prove sex-based motivation as part of Title IX

deliberate indifference claim" and held that "proof of sex-based motivation is required for a Title

IX deliberate indifference claim." *Id.* at 865.[8] *Wolfe* is factually distinguishable from Plaintiffs'

---

[8] To the extent the court in *Wolfe* required evidence of hostility based on sex to find that harassment based on actual or perceived sexual orientation was motivated by sex, the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), calls *Wolfe*'s reasoning into question. *See id.* at 1745-46 ("[N]othing in Title VII turns on the employer's labels or any further intentions (or motivations) for its conduct beyond sex discrimination."); *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc*

case here, which raises claims of sexual assault—a form of discrimination that the Eighth Circuit

recognized as sex-based in more recent decisions.  *See Shank*, 993 F.3d at 573.

## II.    Title IX's Liability Standards for Retaliation Claims

Five of the nine Plaintiffs allege some form of peer retaliation after they reported being

sexually assaulted or harassed to UNL and that UNL did not investigate the reported retaliation.

Plaintiffs' Count 1 alleges that UNL responded to these and other complaints with deliberate

indifference that was designed to dissuade students from seeking assistance and protection.

Plaintiffs' Count 2 alleges that UNL engaged in retaliatory adverse actions against them in

violation of Title IX and its regulations.  UNL seeks to dismiss all of Plaintiffs' retaliation

claims, including by misapplying the Title IX case law in arguing that peer retaliation is not

actionable under Title IX.  Retaliation by a student's peers, and not just retaliation by the school

itself, can support a claim for damages under Title IX where a recipient has knowledge of the

peer retaliation and responds with deliberate indifference.

### A.  Retaliation Claims for Damages

Title IX permits damages actions based on retaliation.  In *Jackson v. Birmingham Board*

*of Education*, 544 U.S. 167 (2005), the Supreme Court explained that "the text of Title IX

prohibits a funding recipient from retaliating against a person who speaks out against sex

discrimination, because such retaliation is intentional discrimination on the basis of sex."  *Id.* at

178 (internal quotation marks omitted).  The Court reasoned that Title IX's prohibition on

"subjecting any person to 'discrimination' 'on the basis of sex'" "authorizes private parties to

seek monetary damages for intentional violations of Title IX," including retaliation and "a

---

*denied*, 976 F.3d 399 (4th Cir. 2020), *petition for cert filed*, No. 20-1163 (Feb. 24, 2021) (applying *Bostock* in the context of Title IX); *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1305 (11th Cir. 2020), *petition for reh'g en banc pending*, No. 18-13592 (Aug. 28, 2020) (same).

recipient's deliberate indifference" to peer sexual harassment.  *See id.* at 173 (quoting 20 U.S.C. § 1681 and citing *Davis*, 526 U.S. at 643).  When analyzing allegations of retaliation by *a federal funding recipient* under Title IX, courts examine whether: (1) the plaintiff complained about sex discrimination or otherwise engaged in protected activity; (2) the plaintiff suffered an adverse action; and (3) a causal connection exists between the protected activity and adverse action.  *See Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1203-04 (8th Cir. 2021) (internal citations omitted).

Consistent with the reasoning in *Jackson* and *Davis*, at least two circuits have recognized that students who suffer retaliation *by their peers* may bring claims for damages under Title IX when the recipient school knows of the peer retaliation and responds with deliberate indifference. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 695 (4th Cir. 2018) ("[A]n educational institution can be liable for acting with deliberate indifference toward known instances of student-on-student retaliatory harassment."); *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1313-14 (10th Cir. 2020) (holding that peer retaliation for reporting a sexual assault is a form of sex-based harassment and can support a Title IX damages claim when a school has actual knowledge of retaliatory harassment and its response is deliberately indifferent).  To state a plausible claim for damages based on *peer* retaliation, the court in *Hurley* required the plaintiffs to allege that: (1) they complained of sexual harassment or otherwise engaged in protected activity; (2) the "retaliatory conduct" constituted "materially adverse" action against them; (3) a causal connection exists between the adverse action and their protected activity; (4) the recipient knew of the peer retaliation; and (5) the recipient responded with deliberate indifference.  911 F.3d at 694-96 (finding plaintiffs sufficiently pled a damages claim where they reported the peer retaliation and the school "took little or no action . . . to address and curtail the

17

retaliatory activities"); *cf. Doe*, 970 F.3d at 1313-14 (holding that peer retaliation for reporting

rape was actionable sex-based harassment and that school's alleged failures to investigate, stop,

or otherwise take seriously the reported retaliation could establish deliberate indifference under

Title IX) (citing *Hurley*, 911 F.3d at 695).[9] "Materially adverse" means that the action would

"dissuade[] a reasonable [person] from making or supporting a charge of discrimination."

*Hurley*, 911 F.3d at 694 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006))

(alterations in original) (internal quotation marks omitted).

These cases correctly recognize that when a student reports sexual assault or other sexual

harassment and the school is deliberately indifferent to subsequent peer retaliation sparked by the

report, the school should compensate the student subject to the retaliation for any resulting denial

of educational opportunity and emotional distress caused by the school's deliberate indifference.

Such an approach furthers Title IX's goal of protecting students from sex discrimination in

education programs—a goal that "would be difficult, if not impossible, to achieve if persons who

complain about sex discrimination did not have effective protection against retaliation."

*Jackson*, 544 U.S. at 180 (quoting Brief for United States as *Amicus Curiae* at 13); *see also*

*Gebser,* 524 U.S. at 286 (emphasizing that Title IX's "principal objectives" are "[t]o avoid the

use of federal resources to support discriminatory practices and to provide individual citizens

effective protection against those practices") (internal quotation marks omitted) (quoting

*Cannon*, 441 U.S. at 704).

---

[9] In *Hurley* and *Doe*, the Fourth and Tenth Circuits applied parts of *Davis*'s framework to find liability where a recipient responds with deliberate indifference to actual knowledge of peer retaliation.  Whether courts treat peer retaliation as sex-based harassment under *Davis* or another type of sex discrimination (e.g., under *Jackson*), private claims for damages require plaintiffs to show that the recipient school engaged in intentional sex discrimination because it knew of the retaliation and responded with deliberate indifference.  *See Davis*, 526 U.S. at 643.

18

**B. Peer Retaliation May Support a Claim for Damages Under Title IX and the Cases on Which UNL Relies Do Not Hold Otherwise**

UNL argues that the five Plaintiffs' claims based on alleged retaliation by UNL and peers must fail. *See, e.g.*, Br. at 60, 64, 66, 68. For example, UNL argues that one of the Plaintiffs (Doe 3) may not "impute the alleged retaliation by [the alleged perpetrator] to [UNL] . . . because the adverse action must be by [UNL]." *Id.* at 64. UNL also argues that the other four Plaintiffs do not allege retaliation or other adverse action by UNL. *See, e.g.*, *id.* at 60, 66, 68.

As explained above, UNL's argument that peer retaliation is not actionable under Title IX is erroneous because, as two federal appellate courts have held, retaliation by a student's peers—and not just retaliation by the school itself—can support a claim for damages under Title IX where a recipient knows of the peer retaliation and responds with deliberate indifference. *See Hurley*, 911 F.3d at 695-96; *Doe*, 970 F.3d at 1313-14. These cases are consistent with the holdings and reasoning in *Jackson* and *Davis*, as well as Title IX's goal to "provide individual citizens effective protection" against "discriminatory practices." *See Cannon*, 441 U.S. at 704.[10] Allowing Title IX claims for damages based on peer retaliation where a school knows of the peer retaliation and responds with deliberate indifference is also consistent with Title VII case law. *See Hurley*, 911 F.3d at 694 ("A clear majority of our sister circuits have similarly held that retaliatory harassment, including coworker harassment, can rise to the level of material adversity.") (citation omitted); *see also Du Bois*, 987 F.3d at 1203-04 (discussing how the Eighth Circuit and many other circuits apply Title VII case law to inform their analysis of Title IX claims, including retaliation claims).

---

[10] These cases are also consistent with the Title IX regulations, which prohibit a recipient *or other person* from intimidating, threatening, coercing, or discriminating against any individuals for the purpose of interfering with any right or privilege under Title IX. *See, e.g.*, Dep't of Educ.'s Title IX regulation at 34 C.F.R. § 106.71(a).

UNL's argument that Title IX prohibits only retaliation by recipients relies on two cases involving claims that the recipient school retaliated against an employee and a university board member for complaining about sex discrimination against students.  *See* Br. at 44 (citing *Jackson*, 544 U.S. at 174, and *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959 (S.D. Iowa 2018), *aff'd*, 958 F.3d 679 (8th Cir. 2020)).  *Rossley* is distinguishable from Plaintiffs' case against UNL because *Rossley* focused on Title IX's requirement that the retaliation occur as part of "an education program or activity" for purposes of determining whether the plaintiff could establish standing.  336 F. Supp. 3d at 964.  Neither *Rossley* nor *Jackson* addressed peer retaliation, and thus they offer no reason for reaching a different conclusion than the courts noted above.  Both cases recognize that a recipient's retaliation against an employee can support damages under Title IX, but neither case held that *only* retaliation by a recipient is actionable, as UNL suggests. Rather, *Jackson* held that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."  544 U.S. at 173.

The *Jackson* and *Davis* holdings support the conclusion that a recipient's deliberate indifference to known retaliation by one student against another for complaining about sex discrimination is intentional sex discrimination that can support a Title IX claim for damages. *See Jackson*, 544 U.S. at 173; *see also Davis*, 526 U.S. at 643, 651 (holding that "deliberate indifference to known acts of harassment—amounts to an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is a student" and the harassment effectively denies access to the educational opportunities or benefits of the school).

Under Title IX, students have the right to safely report sexual assaults and harassment to their school.  For that to happen, schools must protect students from retaliatory harassment

because they reported or participated in the Title IX process and respond effectively to peer

retaliation when it occurs.  When schools know of such retaliatory harassment and ignore it or

otherwise respond with deliberate indifference, they can be held liable for damages under

Title IX for their own intentional discrimination based on sex.

## CONCLUSION

This Court should apply the legal standards explained above to Plaintiffs' Title IX

damages claims.

Respectfully submitted,


_/s/ Brigid Benincasa_
KRISTEN CLARKE
Assistant Attorney General


| | |
|---|---|
| EMMA LEHENY | SHAHEENA A. SIMONS |
| Principal Deputy General Counsel | Acting Deputy Assistant Attorney General |
| U.S. Department of Education | |
| VANESSA J. SANTOS | WHITNEY PELLEGRINO (DC Bar # 490972) |
| Attorney | EMILY H. MCCARTHY (DC Bar # 1251737) |
| Office of the General Counsel | BRIGID BENINCASA (VA Bar # 89001) |
| U.S. Department of Education | AMELIA HUCKINS (MS Bar # 105694) |
| | Educational Opportunities Section |
| | Civil Rights Division |
| | United States Department of Justice |
| | 150 M St. NE |
| | 4CON |
| | Washington, D.C. 20002 |
| | Tel: (202) 514-4092 |
| | Fax: (202) 514-8337 |
| | brigid.benincasa@usdoj.gov |
| | amelia.huckins2@usdoj.gov |

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing United States'

Statement of Interest with the Clerk of Court using the CM/ECF system, which sent notification

of such filing to all attorneys of record.


    /s/ Brigid Benincasa
BRIGID BENINCASA
VA Bar # 89001
Trial Attorney
Educational Opportunities Section
Civil Rights Division
United States Department of Justice

Dated: June 11, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify that this brief complies with the

requirements of NECivR 7.1(d)(1).  Relying on the word-count function of Microsoft Word for

Office Professional Plus 2019, this document contains 6,984 words.  The word-count function

was applied to all text, including the caption, headings, footnotes, and quotations.


_/s/ Brigid Benincasa_
BRIGID BENINCASA
VA Bar # 89001
Trial Attorney
Educational Opportunities Section
Civil Rights Division
United States Department of Justice

Dated: June 11, 2021