IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHERIDAN THOMAS, MIRANDA MELSON, JANE DOE 1, JANE DOE 2, SYDNEY BRUN-OZUNA, JANE DOE 3, CAPRI DAVIS, JANE DOE 4, JANE DOE 5, and OTHER UNIDENTIFIED FEMALE DOES,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, and individuals PETE JEYARAM, LAURIE BELLOWS, JAKE JOHNSON, MATTHEW HECKER, TAMIKO STRICKMAN, JEFF LAMOUREAUX, MEAGAN COUNLEY, RYAN FETTE, BRIANA PALLAS-SEARS, SUE KELLY MOORE, SANDRA CHAVEZ, and JAMIE PEER, individually and in their official capacities, and OTHER UNIDENTIFIED DEFENDANTS,<br><br>        Defendants. | Case No. 4:20-cv-03081 |

---

**BRIEF IN RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

---

Submitted by:

Susan K. Sapp, #19121
Lily Amare, #25735
CLINE WILLIAMS WRIGHT JOHNSON
    & OLDFATHER, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, Nebraska 68508
Telephone: (402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201
bchambers@nebraska.edu

December 9, 2021

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 4

II.   ARGUMENT .................................................................................................... 6

    A.  PLAINTIFFS HAVE FAILED TO POINT TO SUFFICIENT FACTS THAT DEMONSTRATE THE ELEMENTS OF TITLE IX, DELIBERATE INDIFFERENCE CLAIM ......................................................................................................6

        1.   THOMAS', BRUN-OZUNA'S AND MELSON'S TITLE IX, DELIBERATE INDIFFERENCE CLAIMS MUST BE DISMISSED...........................................................................7

        2.   DOE 1'S, DOE 2'S, DOE 3'S, DAVIS', DOE 4'S, AND DOE 5'S TITLE IX, DELIBERATE INDIFFERENCE CLAIMS MUST BE DISMISSED .................................................9

III.  CONCLUSION ................................................................................................ 15

IV.   APPENDICES.................................................................................................16

    APPENDIX A - TIMELINE OF EVENTS RELATED TO DOE 1...............................................16

    APPENDIX B - TIMELINE OF EVENTS RELATED TO DOE 2...............................................17

    APPENDIX C - TIMELINE OF EVENTS RELATED TO DOE 3...............................................18

    APPENDIX D - TIMELINE OF EVENTS RELATED TO DAVIS...............................................19

    APPENDIX E - TIMELINE OF EVENTS RELATED TO DOE 4...............................................20

    APPENDIX F - TIMELINE OF EVENTS RELATED TO DOE 5...............................................21

In accordance with Federal Rules of Civil Procedure 12(b)(6), 20, 21, Local Rule NECivR 7.1 and order of this Court *[Filing No. 53]*, Defendants, the Board of Regents of the University of Nebraska ("BRUN" or "Board of Regents"); Pete Jeyaram ("Jeyaram"), individually and in his official capacity; Laurie Bellows ("Bellows"), individually and in her official capacity; Jake Johnson ("Johnson"), individually and his official capacity; Meagan Counley ("Counley"), individually and in her personal capacity; Tamiko Strickman ("Strickman"), individually and in her official capacity; and Matthew Hecker ("Hecker"), individually and in his official capacity; Jeff Lamoureaux ("Lamoureaux"), individually and in his official capacity; Ryan Fette ("Fette"), individually and in his official capacity; Briana Pallas-Sears ("Pallas-Sears"), individually and in her official capacity; Sue Kelly Moore ("Moore"), individually and in her official capacity; Sandra Chavez ("Chavez"), individually and her official capacity; and Jamie Peer ("Peer"), individually and her official capacity (the defendants will be collectively referred to as "Defendants" and the individual Defendants will be collectively referred to as "State Officials"), respectfully submit this Brief in support of their Motion to Dismiss and to Sever ("Motion") *[Filing No. 40]* on the Second Amended Complaint filed by Plaintiffs ("Plaintiffs") *[Filing No. 29]* and in Response to the Supplemental Brief *[Filing No. 54]*.

## I.   **INTRODUCTION**

Upon being given an opportunity to either clarify their claims and arguments or amend their Complaint as to Counts I, II, and V, Plaintiffs chose to file a Supplemental Brief and attempted to clarify their legal theories and arguments. Specifically, as it relates to their Title IX, Deliberate Indifference claim, Plaintiffs assert the following:

- As it relates to Plaintiffs Sheridan Thomas ("Thomas"), Miranda Melson ("Melson"), and Sydney Brun-Ozuna ("Brun-Ozuna"), BRUN's alleged deliberate

indifference made them vulnerable to future potential harassment *[Filing No. 54, pp. 2].*

- As it relates to Plaintiffs Jane Doe 1 ("Doe 1"), Jane Doe 2 ("Doe 2"), Jane Doe 3 ("Doe 3"), Capri Davis ("Davis"), Jane Doe 4 ("Doe 4"), and Jane Doe 5 ("Doe 5"), BRUN's alleged deliberate indifference caused them to undergo further harassment. *[Filing No. 54, pp. 2–3].*

Although they don't expressly characterize it as such, Plaintiff's Title IX, Deliberate Indifference claims are all limited to post-assault claims. Plaintiffs do not raise any pre-assault claims based on "official policy" or "disparate impact" theories of recovery and the Court should not consider any such claims.

Despite attempting to clarify the legal theories relied on for their Title IX, deliberate indifference claim, Plaintiffs fail to offer sufficient facts to state a plausible Title IX, deliberate indifference claims. Instead, they rely on unsupported conclusions in opposition to BRUN's Motion to Dismiss. This Court is free to ignore unsupported factual conclusions or inferences, as well as sweeping legal conclusions cast in the form of factual allegations. Plaintiffs also ignore cornerstone case law and rely instead on the Statement of Interest filed by the United States. The Statement of Interest is not entitled to deference under Chevron,[1] because the matters at issue in this case require an interpretation of a judicially created remedy, not a statute or regulation.[2]

---

[1] Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837 (1984).

[2] For instance in Karasek v. Regents of the Univ. of Ca., 956 F.3d 1093, 1108 (9th Cir. 2020), the Ninth Circuit Court held:

> Because the DCL [Dear Colleague Letter] does not address that remedial scheme, the DCL is merely advisory and not an interpretation of Title IX that need be afforded deference in this context under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court in *Davis*, not Congress, articulated the deliberate-indifference standard. All we must decide is whether UC's conduct qualifies as deliberate indifference under that standard. *Meritor* is inapposite, and the DCL does not control our inquiry here.

Under the controlling law, which was thoroughly discussed in BRUN's opening Brief and Reply Brief, and in light of the facially defective allegations in Plaintiffs' Second Amended Complaint, the Court should grant BRUN's Motion to Dismiss. In the alternative, this Court should grant BRUN's motion to sever as individualized assessment of each Plaintiff's case is necessary.

Moreover, as it relates to their Title IX, retaliation and Equal Protection claims, Plaintiffs' Supplemental Brief is devoid of any arguments as to how these two claims can survive a motion to dismiss—because they cannot. Therefore, Defendants will rely on the arguments set forth in their opening and Reply Briefs, and respectfully renews its request for the Court to dismiss those claims with prejudice.

## II. ARGUMENT

### A. PLAINTIFFS HAVE FAILED TO POINT TO SUFFICIENT FACTS THAT DEMONSTRATE THE ELEMENTS OF TITLE IX, DELIBERATE INDIFFERENCE CLAIM.

Plaintiffs in their Supplemental Brief now assert that their Title IX, deliberate indifference claim against BRUN is a post-assault claim. As thoroughly discussed in Defendants' Brief and Reply Brief in Support of their Motion *[Filing No. 41 and 52]*, for a post-assault Title IX claim, Plaintiff must allege sufficient facts that plausibly show BRUN was (1) deliberately indifferent; (2) to known acts of discrimination; and (c) which occurred under its control. Shank v. Carleton Coll., 993 F.3d 567, 573 (8th Cir. 2021). Each of the Plaintiffs must allege sufficient facts to show they were subjected to sexual harassment or discrimination that was so severe, pervasive and objectively offense that it effectively bars access to an equal opportunity education based on their respective factual allegations. Id. Deliberate indifference is "when its response to the harassment or lack thereof is ***clearly unreasonable*** in light of the known circumstances." Shank, 993 F.3d at 573 (quoting Davis at 648) (quotation mark omitted). To be considered "deliberately indifferent," BRUN's specific action or inaction must "cause students to undergo harassment or make them

6

liable or vulnerable to it." Id. (quoting Davis at 645.)  "This requires the Title IX plaintiff to demonstrate a '*causal nexus' between the college's conduct and the student's experience of sexual harassment or assault*.'"  Id. (citing Culver-Stockton Coll., 865 F.3d at 1058) (emphasis added).  The "make vulnerable language" does not merely require potential and hypothetical future harassment. Rather, Plaintiffs must actually experience *further harassment*. See Shank, 993 F.3d at 573.

### 1. THOMAS', BRUN-OZUNA'S AND MELSON'S TITLE IX, DELIBERATE INDIFFERENCE CLAIMS MUST BE DISMISSED

Thomas', Brun-Ozuna's and Melson's admissions in their Supplemental Brief, coupled with the facts alleged and embraced by the Second Amended Complaint, warrant dismissal of their post-assault Title IX claims that they were made vulnerable to potential and hypothetical harassment.

Other than the conclusory statement that BRUN's response to their report of sexual misconduct was "drawn-out and inadequate," all three Plaintiffs failed to state which actions or inactions of BRUN state a plausible claim that BRUN was deliberately indifferent. The only plausible explanation for their failure to state a valid claim is that the facts alleged in and embraced by the Second Amended Complaint show BRUN *did take* appropriate remedial measures in a timely fashion. To avoid repetition, BRUN refers this Court to the detailed analysis included in their opening Brief *[Filing No. 45]* and Reply Brief *[Filing No. 52]* describing how BRUN responded in each of the Plaintiffs' cases.

In addition, all three Plaintiffs admit they were not subjected to further harassment after each reported one alleged case of harassment to BRUN; therefore, there cannot be any deliberate indifference that caused these three Plaintiffs to undergo harassment or made them liable or vulnerable to it. *[See Filing No. 54, pp. 3 and 9].* As thoroughly discussed in Defendants' Reply Brief, Plaintiffs must show that they actually experienced further harassment.

What is particularly troubling is that these three Plaintiffs do not even allege that they encountered or were contacted by their respective alleged perpetrators after BRUN undertook its investigations into each of their reports of alleged sexual misconduct. As such, these Plaintiffs are proposing this Court rely on a principle that the U.S. Supreme Court has rejected outright, which is for BRUN to be held liable for not expelling or suspending the alleged perpetrators during its investigation and for finding that the totality of the circumstances did not show (based on the preponderance of the evidence) that the alleged perpetrators engaged in sexual misconduct—a prime example of what BRUN described as "fundamentally untenable" in its Reply Brief. Like all Universities, BRUN has to balance the interest of removing the alleged perpetrator from the educational environment as a potential threat before the matter can be fully adjudicated with BRUN's responsibility as a state actor to uphold the constitutional and Title IX rights of all involved (alleged victims and perpetrators), including due process rights. As the Supreme Court in <u>Davis</u> stated:

> We stress that our conclusion here—that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. We thus disagree with respondents' contention that, if Title IX provides a cause of action for student-on-student harassment, "nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or damages." See Brief for Respondents 16; see also 120 F.3d, at 1402 (Tjoflat, J.) ("[A] school must immediately suspend or expel a student accused of sexual harassment"). Likewise, the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands. See *post*, at 1691 (contemplating that victim could demand new desk assignment). ***In fact, as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators***. <u>New Jersey v. T.L.O.</u>, *supra*, at 342–343, n. 9, 105 S.Ct. 733.

<u>Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 648, 119 S. Ct. 1661, 1673–74, 143 L. Ed. 2d 839 (1999) (emphasis added).

**2.     DOE 1'S, DOE 2'S, DOE 3'S, DAVIS', DOE 4'S, AND DOE 5'S TITLE IX, DELIBERATE INDIFFERENCE CLAIMS MUST BE DISMISSED**

Defendants' opening and reply Brief in Support of their Motion demonstrated that Plaintiffs' Second Amended Complaint fails to state any valid causes of action, including Title IX Deliberate Indifference claim. The Second Amended Complaint fails to put forth sufficient facts that show actions or inactions of BRUN that were clearly unreasonable (deliberate indifference) that caused the Plaintiffs to undergo harassment or made them liable or vulnerable to it.

As previously discussed in the opening and Reply Brief of Defendants, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Warmington v. Bd. of Regents of Univ. of Minnesota, 998 F.3d 789, 795 (8th Cir. 2021) (internal quotation and citations omitted). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the ***reasonable inference*** that the defendant is liable for the misconduct alleged." Id. (emphasis added; internal quotation and citations omitted). "The court is not bound to accept as true a legal conclusion couched as a factual allegation," and "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." Id. (internal quotation and citations omitted).

For purposes of a motion to dismiss, courts are not strictly limited to the four corners of complaints". Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1120 (8th Cir. 2011), as corrected (Aug. 4, 2011) "Courts must accept ... specific factual allegations as true but are not required to accept ... legal conclusions." Id. (citations omitted). Accordingly, when considering a motion to dismiss, "the Court must ordinarily confine its analysis to the four corners of the complaint and ignore all materials ***outside the pleadings***". Id. (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079

9

(8th Cir. 1999). "However, the Court may consider "some materials that are part of the public record or do not contradict the complaint ... **as well as materials that are necessarily embraced by the pleadings**." Id. (citation omitted).

See also Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'"); Target Training Int'l, Ltd. v. Lee, 1 F. Supp. 3d 927, 938 (N.D. Iowa 2014) (holding the court may properly consider all of the exhibits attached to the Amended Complaint in resolving a motion to dismiss, without converting the motion to a motion for summary judgment).

Doe 1, Doe 2, Doe 3, Davis, Doe 4, and Doe 5 argue that BRUN's deliberate indifference caused them to undergo further harassment. In an attempt to survive a motion to dismiss, in their Supplemental Brief, Doe 1, Doe 2, Doe 3, Davis, Doe 4, and Doe 5 make statements that are inconsistent with the allegations in their Second Amended Complaint and the documents Plaintiffs incorporate into the Second Amended Complaint (the 19 exhibits).

As set forth below, Defendants weed through and point out the legal conclusions couched as factual allegations, which this Court is not required to accept, and point out the inconsistencies between the arguments set forth in Plaintiffs' Supplemental Brief and their very own allegations in and documents attached to the Second Amended Complaint. Defendants are only arguing that the allegations as set forth in the Second Amended Complaint and the information necessarily embraced by the Second Amended Complaint are not facially plausible and therefore would not allow the Court to draw reasonable inference that the Defendants are liable for the misconduct alleged.

**First**, Plaintiffs represent to this Court that there was a lack of response by BRUN when the allegations in the Second Amended Complaint and the very documents they attached to their Complaints say otherwise. For illustrative purposes, see appendices below where BRUN outlines the timeline of events, including its appropriate and timely responses as it relates to each of the six Plaintiffs' cases, in turn.

**Second**, they attempt to convince this Court that there are sufficient facts that show that they were subjected to further harassment caused by BRUN, by putting forth inconsistent, and at times false, narratives of the events that took place as it relates to each of the six Plaintiffs.

*Doe 1 makes the following inconsistent statements in an attempt to support her Title IX claim:*

| Doe 1's Statements in Supplemental Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| There was a lack of response by BRUN and BRUN "refused to offer Jane Doe 1 accommodations." | On June 28, 2017, two days after BRUN learned of the hundreds of unwelcomed text messages Doe 1 received from JR4, BRUN issued a no-contact directive. *[Filing No. 29, ¶ 236, 250; Filing No. 29-8]*. |
| Lamoureaux attempted to try to put Doe 1 in contact with JR4 | Lamoureaux simply communicated JR4's ask to try to work things out to Doe 1, and even told her, "I have advised him that he needed to move on....I wanted to share this information with you in case you wanted to work it out with him or find out if he has been bothering you at all." After she declined to work it out with him, Lamoureaux stated, "I will advise him to avoid contact. If he doesn't listen[,] we will take further steps." *[Filing No. 29-7]*. |
| A few early, inadequate sanctions did not deter her stalker. | JR4 did not contact Doe 1 from June 28, 2017 through May 5, 2018. And, when JR4 attempted to contact friends of Doe 1 in December of 2017, BRUN did reinforce the no-contact order, and JR4 ceased his activity of reaching out to her friends. *[Filing No. 29-7; Filing No. 29, ¶ 263 - 270]*. In fact, on October 17, 2017, Doe 1 stated in an |

| | |
|---|---|
| | email "[JR4] has not been bothering me…."*[Filing No. 29-7]*. |
| Ultimately, the only thing that stopped most of her stalker's behavior—though not all of it—was Plaintiff being expelled. | Doe 1 does not allege that JR4 contacted her, her family members, or any of her friends after May 5, 2018. |

***Doe 2 makes the following inconsistent statements in an attempt to support her Title IX claim:***

| Doe 2's Statements in Supplemental Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| IEC failed to offer her accommodations or interim measures. | While IEC investigated, BRUN, through IEC, offered to move Doe 2's office into another building and to change the location of all of the classes she taught. *[Filing No. 29, ¶ 352]*. |
| IEC's lack of response enabled her harasser to continue harassing her. | IEC investigated the sexual assault allegations Plaintiff reported, and ***expelled*** Plaintiff from the University—the most severe consequence it could issue to protect Doe 2. *[Filing No. 29, ¶ 355, 367, 372, 386, 387]*. |

***Doe 3 makes the following inconsistent statements in an attempt to support her Title IX claim:***

| Doe 3's Statements in Supplemental Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| IEC failed to offer her accommodations or interim measures. | BRUN begun its investigation as soon as it learned of the alleged sexual harassment by JR7. While BRUN investigated, JR7 did not engage in ROTC activities, and only went back to ROTC after BRUN issued its findings that JR7 did not engage in sexual harassment/misconduct. *[Filing No. 29-15, pp. 3]*. |
| JR7 retaliated against Plaintiff in January of 2019 after BRUN issued its findings and | There are no factual allegations how JR7 retaliated against Plaintiff. *[Filing No. 29, ¶* |

| | |
|---|---|
| recommendations. | *543].* |
| JR7 continued to stalk her. | There are no allegations that plausibly shows that JR7 did, said or behaved in a manner that would constitute stalking or harassing of Doe 3. *[Filing No. 29, ¶ 544, 545].* |
| Though she continued to report the harassment, IEC did nothing. | BRUN investigated the allegation of further harassment and stalking and issued a finding and recommendation. *[Filing No. 29-15].* |

***Davis makes the following inconsistent statements in an attempt to support her Title IX claim***

| Davis' Statements in Supplemental Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| IEC did not investigate at all. | It is correct that Davis alleges she reported the incident to IEC in April of 2019 and BRUN did not initiate an investigation at that time. However, in October of 2019, BRUN did initiate an investigation into the reported incident. *[Filing No. 29, ¶ 625, 626; Filing No. 29-16].* |
| The lack of response led to Davis' suffering additional harassment. | Davis did not suffer any harassment by JR8 or JR10 between March of 2019 and October of 2019. The incident between Davis and JR10 occurred after BRUN, through IEC, initiated the investigation in October of 2019, not before. As such, there are no actions or inactions of BRUN that led to the incident of October of 2019. *[Filing No. 29, 625 – 635].* |

*Doe 4 makes the following inconsistent statements in an attempt to support her Title IX claim:*

| Doe 4's statements in Supplement Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| IEC did not investigate at all. | It is correct that Doe 4 alleges she reported the incident to IEC in April of 2019 and BRUN did not initiate an investigation at that time. However, in October of 2019, BRUN did initiate an investigation into the reported incident. And this cannot be said to be clearly unreasonable in light of the known circumstances. *[Filing No. 29, ¶ 625, 626; Filing No. 29-16]*.<br><br>Moreover, as it relates to the alleged sexual assault of August of 2018, Doe 4 did not report that sexual assault until November or December of 2019. In her own words, she "chose not to report the rapes…." BRUN initiated an investigation into that allegation as soon as it learned of it. *[Filing No. 29, ¶ 614, 615, 642 – 645; Filing No. 29-16]*. |
| Doe 4 suffered additional harassment as a result of action or inaction of BRUN. | Doe 4 did not suffer any harassment by JR8 or JR10 between March of 2019 through October of 2019. The incident between Davis and JR10 occurred after BRUN, through IEC, initiated the investigation in October of 2019, not before. And the altercation was actually about IEC beginning investigation into the reported incident. As such, there are no actions or inactions of BRUN that led to the incident of October of 2019. *[Filing No. 29, ¶ 625 – 635]*. |

*Doe 5 makes the following inconsistent statements in an attempt to support her Title IX claim:*

| Doe 5's Statements in Supplemental Brief | Facts from the Second Amended Complaint and the Documents Incorporated Therein. |
|---|---|
| There is a causal nexus between UNL's inaction and Doe 5's suffering additional harassment. | Doe 5 admits that she did not report any of the alleged sexual assaults to any appropriate official, and in fact did not want to move forward with the investigation or law enforcement processes. Accordingly, BRUN could not do anything to try to protect her, when it did not know what was |

| | going on in the first place due to her disinterest in reporting. *[Filing No. 29, ¶ 702-705, 718, 729 - 747].* |
|---|---|

As demonstrated above and as set forth in Defendants' opening and Reply Brief, each and every of the six Plaintiffs have failed to allege sufficient facts that show a causal nexus between any action or inaction of BRUN that was clearly unreasonable and the further harassment they allegedly suffered.

For these reasons, and those provided in Defendants' Brief and Reply Brief, BRUN respectfully asks this Court to dismiss the Title IX claims with prejudice.

### III.   <u>CONCLUSION</u>

Defendants respectfully request that the Court grant their Motion to Dismiss and enter an Order dismissing Plaintiffs' causes of action against the Defendants in their entirety and with prejudice, and/or to sever this case.

# IV.    APPENDICES

## APPENDIX A - TIMELINE OF EVENTS RELATED TO DOE 1

| | |
|---|---|
| From April 2017 – June 28, 2017 | Doe received hundreds of unwelcomed text messages from JR4. *[Filing No. 29, ¶ 236 – 249].* |
| June 28, 2017 | BRUN learned of the text messages. *[Filing No. 29, ¶ 250].* |
| June 30, 2017 | BRUN issued a no-contact directive to JR4. *[Filing No. 29, ¶ 236; Filing No. 29-6].* |
| June 30, 2017 – May 4, 2018 | There was no contact between JR4 and Doe[3]. In fact, on October 17, 2017, Doe 1 stated that JR4 "has not been bothering me." *[Filing No. 29-7].* |
| May 5, 2018 | Doe received an email from JR4. *[Filing No. 29, ¶ 274 – 275].* |
| May 10, 2018 | Doe reported this to BRUN and she was given options as to how to proceed. *[Filing No. 29, ¶ 280 - 286].* |
| May 24, 2018 | Doe 1 decided to move forward with formal complaint and investigation. *[Filing No. 29, ¶ 291].* |
| June 15, 2018 | UNLPD issued a stalking citation. *[Filing No. 29, ¶ 301].* |
| July 27, 2018 | BRUN issued a finding and recommendation and found JR4 violated three sections of the Student Code of Conduct. BRUN issued the following sanctions: one-year probation and maintaining of the no-contact directive that was in place. *[Filing No. 29, ¶ 309].* |
| June 30, 2018 | Doe 1 appealed. *[Filing No. 29, ¶ 310].* |
| September 18, 2018 | After a hearing, the appeal/hearing officer, Moore, after upholding the findings, issued a more robust sanction: extended the probation to the duration of JR4's time at the University, ordered the no-contact directive to stay in place and restricted JR4's access to the Morrison Center where Jane Doe 1 worked. *[Filing No. 29, ¶ 321].* |
| September of 2018 | Doe appealed Moore's decision. *[Filing No. 29, ¶ 322].* |
| October 31, 2018 | Bellows, the appeal officer, affirmed Moore's decision. *[Filing No. 29, ¶ 326].* |
| From May 6, 2018 – August of 2020 | There was no contact between JR4 and Doe 1. Doe 1 graduated with her PhD in August of 2020. *[Filing No. 29, ¶ 332].* |

---

[3] When JR4 attempted to contact friends of Doe 1 and sent emails about Doe 1 in December of 2017, BRUN reinforced the no-contact directive and created additional safety plan. JR4 did not contact Doe 1 at this time. *[Filing No. 29, ¶ 267–268, 270].*

16

**APPENDIX B - TIMELINE OF EVENTS RELATED TO DOE 2**

| | |
|---|---|
| March of 2016, and July 14 and 24, 2017 | Doe 2 alleges JR5 sexually assaulted her. *[Filing No. 29, ¶ 355].* |
| November 21, 2017 | Doe 2 reported the alleged sexual assaults. *[Filing No. 29, ¶ 349, 350].* |
| November 21, 2017 – April 6, 2018 | BRUN investigated the alleged sexual assaults, and in the interim, BRUN offered to move Doe 2's office into another building and to change the location of all of the classes she taught. *[Filing No. 29, ¶ 350, 351].* |
| April 6, 2018 | BRUN issued its findings and recommendations and found the greater weight of the evidence supported JR5 sexually assaulted Doe 2 on July 24, 2017. BRUN expelled JR5. *[Filing No. 29, ¶ 367-369, 372].* |
| April of 2018 | JR5 appealed. *[Filing No. 29, ¶ 373].* |
| May of 2018 | After pre-hearing and hearing, JR5's expulsion was affirmed. *[Filing No. 29, ¶ 386].* |

17

**APPENDIX C - TIMELINE OF EVENTS RELATED TO DOE 3**

| | |
|---|---|
| October 26, 2018 | Doe 3 reported alleged sexual harassment by JR7 by making "inappropriate and unwelcome" comments and questions after she came out as bisexual. *[Filing No. 29, ¶ 514, 518, 519, 524].* |
| October 26 – November 27, 2018 | BRUN investigated the alleged sexual harassment. In the interim, JR7 did not engage in ROTC activities to avoid contact with Doe 3. *[Filing No. 29-15, pp. 3].* |
| November 27, 2018 | BRUN issued its findings and recommendations and found JR7 did not violate the Student Code of Conduct. *[Filing No. 29, ¶ 531].* |
| November of 2018 | Doe 3 appealed. *[Filing No. 29, ¶ 540].* |
| January 28, 2019 | Moore, Student Affairs Officer, upheld the findings and recommendations. *[Filing No. 29, ¶ 553].* |
| October 26, 2018 – April of 2019 | There are no allegations of JR7 making any contact with her. |
| April 13 and 15, 2019 | Doe 3 reported incidents claiming JR7 is retaliating against and stalking her. *[See Filing No. 29-15 for the type of incidents she reported].* |
| October of 2019 | BRUN, through Jeyaram, issued a letter outlining his findings and recommendations, and found JR7 did not retaliate or stalk Doe 3. *[See Filing No. 29-15].* |

18

**APPENDIX D - TIMELINE OF EVENTS RELATED TO DAVIS**

| | |
|---|---|
| March or April of 2019 | Either JR8 or JR10 placed a hand on Davis' buttock. *[Filing No. 29, ¶ 617].* |
| April of 2019 | Allegedly reported the incident to BRUN. *[Filing No. 29, ¶ 618-619].* |
| October 2019 | Allegedly reported the incident again to BRUN and BRUN begun its investigation. *[Filing No. 29, ¶ 626].* |
| October of 2019 | After BRUN begun its investigation, there was an altercation at an off-campus party where JR10 exchanged words with Davis. Between March of 2019 until this incident, there are no allegations of harassment of Davis. *[Filing No. 29, ¶ 630 - 635].* |
| December 5, 2019 | BRUN issued its findings and recommendations and found that there is insufficient information to determine who may have touched Davis' buttock. *[Filing No. 29-16].* |

19

**APPENDIX E - TIMELINE OF EVENTS RELATED TO DOE 4**

| | |
|---|---|
| August 17, 2018 | Alleged sexually assaulted by two male student-athletes, JR8 and JR9 ("August 17 incident"). *[Filing No. 29, ¶ 614, 615].* |
| March or April of 2019 | Either JR8 or JR10 placed their hands on Doe 4's buttock. *[Filing No. 29, ¶ 617].* |
| April of 2019 | Allegedly reported the incident of March or April of 2019 to BRUN. *[Filing No. 29, ¶ 618-619].* |
| October 2019 | Allegedly reported the incident of March or April of 2019 again to BRUN and BRUN begun its investigation. *[Filing No. 29, ¶ 626].* |
| December 5, 2019 | BRUN issued its findings and recommendations and found that there is insufficient information to determine who may have touched Doe 4's buttock. *[Filing No. 29-16].* |
| November or December of 2019 | Doe 4 reported the August 17 incident to BRUN, and BRUN begun its investigation. *[Filing No. 29, ¶ 646].* |
| January 14, 2020 | BRUN issued its findings and recommendations and found that the greater weight of the evidence shows JR8 and JR9 did not engage in sexual misconduct. *[Filing No. 29, ¶ 29-17].* <br> Doe 4 did not appeal either of the findings and recommendations. |

**APPENDIX F - TIMELINE OF EVENTS RELATED TO DOE 5**

| December of 2018 | Allegedly assaulted by JR11 and JR12. Doe 5 declined to report this incident to UNLPD or BRUN, or let them investigate the allegation. *[Filing No. 29, ¶ 702, 704, 705].* |
|---|---|
| February of 2019 | Allegedly assaulted by JR10 but did not report this incident to UNLPD or BRUN. *[Filing No. 29, ¶ 708–713].* |
| October of 2019 | There was an altercation between herself and JR10's girlfriend. Doe 5 did not report this incident or the other incidents to UNLPD or BRUN. *[Filing No. 29, ¶ 729–747].* |

21

Dated this 9th day of December, 2021.

<div style="margin-left:40%">

BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA; PETE JEYARAM, in his official and individual capacity; LAURIE BELLOWS, in her official and individual capacities; JAKE JOHNSON, in his individual and official capacity; MATTHEW HECKER, in his official capacity; TAMIKO STRICKMAN, in her individual and official capacity; JEFF LAMOUREAUX, in his individual and official capacity; MEAGAN COUNLEY, in her official and individual capacity; RYAN FETTE, in his individual and official capacity; BRIANA PALLAS-SEARS, in her individual and official capacity; SUE KELLY MOORE, in her official and individual capacity; SANDRA CHAVEZ, in her official and individual capacity; and JAMIE PEER, in her official and individual capacity, Defendants

</div>

By:    /s/ Lily Amare
Susan K. Sapp #19121
Lily Amare #25735
Cline Williams Wright
  Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
(402) 474-6900
ssapp@clinewilliams.com
lamare@clinewilliams.com

AND

Bren H. Chambers, #23150
Associate General Counsel
University of Nebraska
3835 Holdrege Street
Lincoln, NE 68583-0745
402-472-1201
bchambers@nebraska.edu

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Reply Brief complies with the limits set forth in NECivR 7.1(d). Further, I certify that based upon the word-count function of Microsoft Word 2013 word-processing software, applied to include all text, including the caption, headings, footnotes, and quotations, this Brief contains 5,405 words.

/s/ Lily Amare
Lily Amare

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as well as electronically transmitted.

Karen Truszkowski
TEMPERANCE LEGAL GROUP, PLLC
503 Mall Court #131
Lansing, MI 48912
karen@temperancelegalgroup.com

Elizabeth K. Abdnour
ELIZABETH ABDNOUR LAW, PLLC
1146 S. Washington Ave., Ste. D7
Lansing, MI 48910
elizabeth@abdnour.com

/s/ Lily Amare
Lily Amare

4877-3989-7094, v. 3

23